**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 27, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
————————————————————

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

THOMAS FORSTER GEHRMANN, JR.,

      Defendant - Appellant.

No. 19-1145

————————————————————

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:15-CR-00303-RBJ-1)**
————————————————————

Jane H. Ruemmele, Indianapolis, Indiana, for Defendant-Appellant.

Alexander P. Robbins, Attorney, Tax Division (Richard E. Zuckerman, Principal Deputy
Assistant Attorney General; S. Robert Lyons, Chief, Criminal Appeals & Tax
Enforcement Policy Section; Stanley J. Okula, Jr., and Mark S. Determan, Attorneys, Tax
Division; Jason R. Dunn, United States Attorney, Denver, Colorado, of Counsel, with
him on the brief), Department of Justice, Washington, D.C., for Plaintiff-Appellee.

————————————————————

Before **LUCERO**, **KELLY**, and **PHILLIPS**, Circuit Judges.

————————————————————

**PHILLIPS**, Circuit Judge.

————————————————————

     Dr. Thomas Forster Gehrmann, Jr., appeals a portion of his sentence—a two-

level adjustment under § 3B1.1(c) of the U.S. Sentencing Guidelines Manual (the

"Guidelines" or "U.S.S.G.") (U.S. Sentencing Comm'n 2018) for his aggravating role

in a conspiracy to defraud the United States. In the district court, Dr. Gehrmann never objected to the adequacy of the court's explanation of its sentencing decision. Accordingly, we review this issue for plain error. We conclude that the district court did not adequately explain its basis for imposing the adjustment. But we also conclude that Dr. Gehrmann cannot show a reasonable probability of a different sentencing outcome on a remand. The district court's findings, the undisputed findings in the presentence report (PSR), and the facts acknowledged in Dr. Gehrmann's appellate briefs show that he qualifies for the adjustment as an organizer of the criminal activity. Exercising jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we affirm.

## BACKGROUND

In 2001, two chiropractors, Drs. Gehrmann and Eric Carlson, opened Atlas Chiropractic Center in Colorado Springs, Colorado. By mid-2005, they had hired office staff, including an office manager, a chiropractic assistant, and a massage therapist. In addition, they hired that year a newly graduated chiropractor, Dr. John Davis, as a preceptee. A few months later, Dr. Davis completed his preceptorship at Atlas, enabling him to become an associate at the business. This allowed Atlas to expand and treat more patients.

In the last few months of 2006, Dr. Davis negotiated with the other two doctors for a one-third share of the business. In January 2007, Dr. Davis became a full partner after agreeing to pay a $350,000 buy-in amount—$200,000 financed by a bank, and $75,000 each financed by the other two doctors.

2

In January 2007, at a meeting among the three doctors, Drs. Gehrmann and Carlson advised Dr. Davis of their income-diversion scheme. Drs. Gehrmann and Carlson explained that they placed cash payments and checks written to the treating doctor (as opposed to the business) in a cookie jar[1] and regularly split those proceeds. They told Dr. Davis "that all small businesses basically do this[.]" Appellant's App. vol. II at 475:1. Unsurprisingly, Drs. Gehrmann and Carlson did not bluntly discuss their scheme as one to defraud the United States or sign a written agreement with Dr. Davis to defraud the United States. But Dr. Davis understood that the purpose of the scheme was to avoid claiming the diverted money as income on their tax forms.[2] Dr. Davis testified that it was "obvious" that this was the reason for separating and distributing the checks placed in the cookie jar. *Id.* at 490:3–10. And in fact, after splitting the money, each doctor deposited his share of this diverted money into his personal bank account instead of Atlas's business account. They neither reported this income to Atlas's bookkeeper or tax preparer nor paid taxes on it.

In 2004 or 2005, about two years before Dr. Davis joined the conspiracy, Drs. Gehrmann and Carlson crafted this scheme, instructing patients to write checks to them individually instead of to Atlas. Further, they instructed their front-desk staff to

---

[1] The cookie jar was a plastic container that originally held fortune cookies.

[2] Despite this, the dissent contends that Dr. Gehrmann's organizer status is shaky—apparently because the conspirators did not specify that they were diverting money to defraud the government. Dissenting Op. at 13. The obviousness was not lost on Dr. Davis or the jury. The lack of an "agreement formed to participate in a tax fraud scheme" did not prevent Dr. Gehrmann's conviction and does not bear on his organizer status. *Id.* at 13 n.9.

have patients write checks to them personally rather than to the business. Along this line, at least by 2007, the doctors had posted a sign on the front desk directing patients as follows: "Please make checks payable to Dr. Eric Carlson, Dr. Tom Gehrmann, Dr. John Davis." *Id.* at 250:20–21. The staff had patients rewrite their checks if written to the business and reminded the patients to write checks payable to the individual doctors in the future. At the end of each business day, the office staff made two photocopies of all checks received (placing one copy in an office binder and the other in Dr. Gehrmann's office), put any checks written to Atlas in a deposit bag for deposit in the business's account, and placed the checks written to the treating doctors in the cookie jar. In 2007, the doctors opened another business, SpineMed Decompression Center, in the same building as Atlas—sharing employees, the front office, and other resources—and solicited payments the same way from SpineMed patients.

In the beginning and for the first few years, Dr. Carlson was responsible for collecting the checks written to the treating doctors. He left on the other doctors' desks their share of the checks, with a sticky note providing an updated balance of the distributions. But by 2009, Dr. Gehrmann had become suspicious that Dr. Carlson was taking more than his share, so Dr. Gehrmann took over responsibility for the incoming checks, keeping the cookie jar in his office. In 2010, he improved the system after having a staff member purchase a "Records" notebook for him. On the cover he wrote "Secret" above the preprinted "Records" (so it read "Secret Records"). In his Secret Records book, Dr. Gehrmann recorded the checks that each

4

doctor had received and the payouts to each doctor. He further had each doctor sign his initials to memorialize each payout. The doctors met about weekly, usually in Dr. Gehrmann's office, to divide the diverted payments.

This continued until September 2011, when federal agents executed a search warrant at the Atlas/SpineMed office. After this, the doctors had their office staff instruct patients to make their checks payable to Atlas (or SpineMed), not to the individual doctors. Though some patients kept writing checks to their treating doctor, the office staff now began depositing those checks in the businesses' bank accounts. In 2014, Dr. Gehrmann sold his portion of the practice to Dr. Davis.

In July 2015, a grand jury indicted Drs. Gehrmann and Carlson on four felony charges each: one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371 and three counts of filing false tax returns in violation of 26 U.S.C. § 7206(1). A month later, Dr. Davis—who was cooperating with investigators, and not indicted—pleaded guilty to willfully delivering a false tax return to the Internal Revenue Service in violation of 26 U.S.C. § 7207, a misdemeanor. In October 2018, after this court reversed the district court's order suppressing evidence seized under the search warrant, *see generally United States v. Gehrmann*, 731 F. App'x 792 (10th Cir. 2018) (unpublished), Dr. Carlson pleaded guilty to a felony count of filing a false tax return in violation of 26 U.S.C. § 7206(1). But Dr. Gehrmann went to trial, and a jury convicted him on all four counts.

Before sentencing, the parties stipulated to a loss amount of $235,356, resulting in a base offense level of 16. *See* U.S.S.G. §§ 2T1.1(a)(1), 2T4.1(F). But

Dr. Gehrmann had filed several written objections to other portions of the PSR. As concerns this appeal, he objected to the PSR's recommended three-level adjustment under U.S.S.G. § 3B1.1(b) for his aggravating role in the criminal activity.[3] For this objection, he argued related points about the conspiracy's breadth: that the criminal activity had neither involved five or more participants (persons criminally liable) nor had been otherwise extensive. Notably, in his short, written objection, Dr. Gehrmann did not object to the PSR's characterizing him as a manager or supervisor of the criminal activity.

At the sentencing hearing, the district court resolved each of Dr. Gehrmann's written objections. Along the way, the court eventually reached the PSR's recommended three-level adjustment for Dr. Gehrmann's having acted as a manager or supervisor in criminal activity involving five or more participants. The district court noted that if Dr. Gehrmann was "an organizer or leader or manager or supervisor" of the criminal activity, the criminal activity could involve fewer than five participants and still result in "the addition of two levels" under § 3B1.1(c). Appellant's App. vol. III at 617:21–22, 617:25–618:1. Having offered those thoughts,

---

[3] Section 3B1.1(b) applies "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive[.]" The district court rejected the PSR's recommendation to apply this adjustment, instead favoring § 3B1.1(c), which applies to all four statuses. The dissent characterizes the PSR as explicitly finding that Dr. Gehrmann was not an organizer, but the PSR has no findings on any of the statuses. And we do not understand the dissent's suggesting that the PSR would somehow be authoritative on this point anyway—after all, the dissent does not hesitate to reject the PSR's characterizing the offense as one involving five or more participants.

6

the court remarked to defense counsel, "Okay. I need to hear what you have to say, if anything, about that." *Id.* at 618:1–2.

Dr. Gehrmann's counsel responded, "Just briefly, Your Honor, because I think our pleadings are pretty comprehensive and cover the arguments that we would make." *Id.* at 619:6–7. Addressing the PSR's recommended three-level adjustment under § 3B1.1(b), counsel noted that under "the plain language of the guidelines, it just doesn't apply here." *Id.* at 620:9–10. The court cut in to say, "I think the Government actually agrees with you on this." *Id.* at 620:12–13. The court continued, "I think they agreed that the applicable enhancement is not 3B1.1(b), but 3B1.1(c)," which the court noted "would change the level a little bit." *Id.* at 620:22–23, 620:25. Even so, counsel returned to subsection (b), arguing that "this isn't a case that involves some kind of sophisticated tax evasion scheme that involved millions and millions of dollars," but instead involved "three chiropractors at a small business in Colorado Springs." *Id.* at 621:2–5. After this, perfunctorily touching on subsection (c) too, counsel concluded with these fateful words:

> There is no evidence to suggest that Mr. Gehrmann, for instance, is, you know, any more responsible than Dr. Carlson, or Dr. Davis for the years in which Dr. Davis was a partner at Atlas. And so, you know, we would maintain that there should be no adjustment for the role in the offense under either subsection.

*Id.* at 621:5–11.

When the government had an opportunity to comment, it agreed with the district court's assessment that it was seeking two levels under § 3B1.1(c), not three levels as the PSR recommended under § 3B1.1(b). The government argued that

7

"[t]here's no doubt that the Defendant was an organizer, leader, manager, and supervisor." *Id.* at 623:20–21. As support, the government pointed out that Drs. Gehrmann and Carlson ran the business "and it was a criminal activity[.]"[4] *Id.* at 623:22–24.

After moving on to address Dr. Gehrmann's other objections, the court returned to the aggravating-role adjustment. The court noted that "[f]inally, with respect to the manager or supervisory role enhancement, as I said, there are three levels that apply if somebody is an organizer, leader, manager, or supervisor." *Id.* at 628:3–5. First, concerning the four-level adjustment under § 3B1.1(a), the court commented that no one contended that Dr. Gehrman "was necessarily an organizer or leader, or even if he was, that there were five or more people involved[.]" *Id.* at 628:9–10. Second, concerning the three-level adjustment under § 3B1.1(b), the court noted that Dr. Gehrmann would have to be "a manager or supervisor, not an organizer or leader, but a manager or supervisor, and [that] the criminal activity involved five or more participants or was otherwise extensive[.]" *Id.* at 628:13–16. Though the court agreed with the probation officer that "there were more than three

---

[4] The dissent asserts that "[t]he majority's focus on Gehrmann and Carlson's coordination of office staff is therefore misplaced because it does not concern the organization, leadership, management, or supervision of other participants in the scheme." Dissenting Op. at 14. This misses the mark. The majority speaks to those two doctors' directing office staff to take steps to assist in the fraud. This evidence matters apart from whether the persons directed are criminally responsible participants under § 3B1.1. One of the factors the Sentencing Commission gives us for evaluating whether a person is an organizer is "the nature of participation in the commission of the offense[.]" U.S.S.G. § 3B1.1 cmt. n.4.

8

people whose participation was necessary for this whole scheme to work," *id.* at 628:20–21, the court was unpersuaded that "the staff in the office knowingly, willfully participated in any wrongdoing,"[5] *id.* at 628:23–24.

That left just the third possibility—a two-level adjustment under § 3B1.1(c). Here the court made a specific finding. It found that "this thing was cooked up between Carlson, Gehrmann, Davis later joined in, but I'm going to presume that the people in the office, the receptionist, the people like that were just doing what they were told to do, and this was not a five-or-more-person conspiracy." *Id.* at 628:24–629:4. Addressing subsection (c)'s terms, the court read, "If the Defendant was an organizer, leader, manager, or supervisor in any criminal activity other than that described in categories A or B, increase by two levels," and declared, "[t]hat one applies."[6] *Id.* at 629:5–8. Wrapping up, the court found that Dr. Gehrmann "was at a

---

[5] We do not know what the dissent relies on to say that in evaluating Dr. Gehrmann's role, "the district court appears to have focused solely on the number of individuals involved in the scheme to determine which of § 3B1.1's three tiers applied." Dissenting Op. at 5. In fact, the district court properly counted the participants—finding the three doctors qualified, but not the office staff—and directed its gaze at § 3B1.1(c). Doing so was proper.

[6] The dissent repeatedly states that the district court did not consider whether Dr. Gehrmann was an organizer. But the court more than once stated that an organizer qualifies under § 3B1.1(c). And its reference to Dr. Gehrmann's "at a minimum" qualifying as a manager or supervisor is understandable—the PSR had deemed him a manager or supervisor. Appellant's App. vol. III at 629:9. And as mentioned, Dr. Gehrmann objected to three levels under § 3B1.1(b), while not contesting that he was a manager or supervisor in the criminal activity. In addition, the district court found that "this thing was cooked up between Carlson, Gehrmann, Davis later joined in[.]" Appellant's App. vol. III at 628:24–629:1. That describes the very sort of activity qualifying one as an organizer. Drs. Gehrmann and Carlson

9

minimum a manager or supervisor in this criminal activity, and that two levels of increase, not the three levels that the probation office found, should apply." *Id.* at 629:9–11.

Accordingly, the court applied a total offense level 18 and a criminal history category I, which together rendered an advisory Guidelines range of 27–33 months. U.S.S.G. Ch. 5, Pt. A, Sentencing Table. From that, the district court next considered whether to exercise its discretion to vary below the advisory low-end sentence.

In considering whether to vary, the district court summarized the case and evidence as follows:

> The facts are that, as I said, Mr. Gehrmann was convicted by jury trial of conspiring -- conspiring with Dr. Carlson, and to some extent with Dr. Davis, to divert income into their personal bank accounts to avoid taxes. I'm not going to even begin to attempt to describe all of the evidence that was presented at trial. There's a pretty good summary I think in the presentence investigation report at their paragraphs 6 through 13, but in some ways it can be summarized quite simply.
>
> The doctors decided that it was a good idea to have their patients make some of the checks out, not to the practice, but to them individually, and those checks went into the so-called cookie jar, and they were diverted ultimately from their tax returns. They had this so-called secret book and so forth, but it's just about as simple as that. We'll report some of the income, but not all of it, and our taxes, yes, we'll pay taxes, but not as much. And that is not acceptable, and that is why the jury, after a trial, convicted them of all these counts.

Appellant's App. vol. III at 672:17–673:10.

---

cooked up the tax-fraud scheme. And they recruited Dr. Davis into the tax-fraud scheme they had cooked up. How else would he get there? So contrary to the dissent's statement, the majority opinion simply applies undisputed facts regarding the recruitment—it does not make fact findings. *See* Dissenting Op. at 10–13.

10

Then, after considering the factors from 18 U.S.C. § 3553(a), the court announced a 24-month sentence. Even then, the district court asked, "Anything else, [defense counsel]?" and she responded, "Nothing from the defense, Your Honor." *Id.* at 681:19–20. With this needed background, we now consider Dr. Gehrmann's appeal.

## DISCUSSION

Dr. Gehrmann contends that the district court erred in two ways: (1) by not adequately explaining its findings in support of the § 3B1.1(c) adjustment, and (2) by imposing the adjustment without sufficient evidence. We address each argument in turn. For the reasons given below, we hold for the first argument that Dr. Gehrmann cannot satisfy the prejudice prong of the plain-error standard, and for the second argument that sufficient evidence supports the adjustment.

I.   **Procedural Reasonableness: Adequacy of Explanation of Reasons for Imposing Two Levels Under § 3B1.1(c)**

   A.   **Standard of Review**

A district court explains its reasons for a sentence at the sentencing hearing, so a defendant must object at the hearing to preserve an objection to the adequacy of the court's findings. *See United States v. Yurek*, 925 F.3d 423, 444 (10th Cir. 2019) (requiring a "contemporaneous objection" to a "court's explanation for a sentence" (citations and internal quotation marks omitted)). If a defendant fails to preserve an objection, "any review would be confined to the plain-error standard." *Id.* at 445 (citing *United States v. Romero*, 491 F.3d 1173, 1178 (10th Cir. 2007)). Here, as

11

spelled out above, the district court gave Dr. Gehrmann's counsel multiple opportunities to speak and to object at several junctures of the sentencing hearing. *See supra* pp. 7–11. Though Dr. Gehrmann's counsel availed herself of the opportunities to speak, she never objected to the adequacy of the court's findings. Accordingly, we will review this first claim for plain error.[7] *See Yurek*, 925 F.3d at 444–45; *United States v. Marquez*, 833 F.3d 1217, 1220 (10th Cir. 2016); *United States v. Uscanga-Mora*, 562 F.3d 1289, 1293 (10th Cir. 2009).

**B.** **Dr. Gehrmann's Challenge to the Adequacy of the District Court's Findings Does Not Satisfy Our Plain-Error Standard.**

To merit relief under the plain-error standard, Dr. Gehrmann must establish "(1) error, (2) that is plain, which (3) affects [his] substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Uscanga-Mora*, 562 F.3d at 1295 (quoting *United States v. Cook*, 550 F.3d 1292, 1298 (10th Cir. 2008)) (internal quotation marks omitted). Dr. Gehrmann contends that he has met this standard because "the court's failure to make any findings . . . is plain on the record" and "resulted in an 'erroneous, and higher,

---

[7] We usually treat unpreserved arguments as forfeited, but when a defendant "also fails to make a plain-error argument on appeal, we ordinarily deem the issue waived (rather than merely forfeited) and decline to review the issue at all[.]" *United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019) (citing *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128, 1130–31 (10th Cir. 2011)). Here, Dr. Gehrmann first argued plain error in his reply brief. But the government has not asserted waiver, and we will exercise our discretion to review his challenge to the adequacy of the district court's findings under the plain-error standard. *See Yurek*, 925 F.3d at 445 (citing *United States v. Zander*, 794 F.3d 1220, 1232 n.5 (10th Cir. 2015)).

12

Guidelines range [that] set the wrong framework for the sentencing proceedings.'"[8] Appellant's Reply Br. at 9 (alteration in original) (quoting *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016)).

### 1.  Prongs 1 and 2: Error that is plain

We agree that the district court's findings do not meet our requirement that it "must make specific findings and 'advanc[e] a factual basis' to support an enhancement under U.S.S.G. § 3B1.1." *United States v. Ivy*, 83 F.3d 1266, 1292 (10th Cir. 1996) (alteration in original) (quoting *United States v. Wacker*, 72 F.3d 1453, 1477 (10th Cir. 1995)). The district court may well have thought it had no need to be more specific because Dr. Gehrmann had neither before or at the sentencing hearing objected to the PSR's finding that he qualified as a manager or supervisor. Perhaps lost in the lengthy sentencing hearing was defense counsel's single uttered sentence saying that Dr. Gehrmann was no more responsible than his coconspirators and should not receive an adjustment under either subsection (apparently referencing § 3B1.1(b) and (c)). Though arguable, we conclude that this abbreviated mention required the district court to better explain how Dr. Gehrmann qualified as a leader,

---

[8] The dissent agrees with this argument. Dissenting Op. at 5–6. The problem with this approach is that it assumes that the § 3B1.1(c) adjustment does not apply. Because we conclude that it does apply, the *Molina-Martinez* issue never arises.

13

organizer, manager or supervisor of the criminal activity. Accordingly, we conclude that Dr. Gehrmann has shown error that was plain.[9]

### 2. Prong 3: A reasonable probability of a different sentencing outcome

Dr. Gehrmann fails on the plain-error standard's third prong—which requires him to show a reasonable probability that the error led to an incorrect Guidelines application. *See, e.g.*, *Uscanga-Mora*, 562 F.3d at 1295. Here lies the chief disagreement between the majority and dissenting opinions. The dissent would limit this inquiry into whether Dr. Gehrmann has shown a reasonable probability that the district court would change course on its finding that, at a minimum, Dr. Gehrmann had acted as a manager or supervisor in the criminal activity. In contrast, the majority would inquire whether Dr. Gehrmann has shown a reasonable probability that he would not qualify for the two-level adjustment under § 3B1.1(c).

In *United States v. Belfrey*, 928 F.3d 746, 751 (8th Cir. 2019), the Eighth Circuit faced a similar issue in reviewing an adjustment under § 3B1.1(a). On appeal, the defendant challenged the district court's finding that the criminal activity had involved more than five participants. *Id.* The court declined to review whether the

---

[9] The dissent concludes that "our precedents require us to remand for the district court to make specific findings in support of its sentencing calculation [regarding organizer]." Dissenting Op. at 1. To reach this conclusion, the dissent relies on *United States v. Chisum*, 502 F.3d 1237, 1242 (10th Cir. 2007), *Wacker*, 72 F.3d at 1477, and *United States v. Pelliere*, 57 F.3d 936, 940 (10th Cir. 1995). Dissenting Op. at 2–3. But none of these cases involve a plain-error challenge to the specificity of the district court's findings. Those cases are important for the first two prongs of the plain-error analysis, but provide no help on the third.

14

district court's finding was clear error, instead affirming on a ground that the district court had not reached—that "the criminal activity here was 'otherwise extensive.'"[10] *Id.* (citation omitted).

In *Yurek*, our court did something similar in analyzing whether the district court applied the wrong test under U.S.S.G. § 3B1.2.[11] 925 F.3d at 445–46. In that case, a husband and wife were prosecuted for tax evasion and bankruptcy fraud. *Id.* at 444. The district court ruled that the wife was ineligible for a mitigating-role adjustment under § 3B1.2 because her participation had been "central and necessary for both . . . crimes to take place." *Id.* (omission in original) (citation and internal quotation marks omitted). Though the government conceded on appeal that the district court's test was erroneous, our court did not automatically remand for

---

[10] *See also United States v. Reyes-Rodriguez*, 725 F. App'x 303, 304 (5th Cir. 2018) (per curiam) (unpublished) (no plain error in applying § 3B.1.1 adjustment based on defendant's role in his drug-trafficking offense because, even if that was error, the adjustment was warranted based on his role in a money-laundering offense); *United States v. Saavedra-Moreno*, 544 F. App'x 251, 251 (5th Cir. 2013) (per curiam) (unpublished) (no plain error in applying § 3B1.1 based on a defendant's directing a confidential source because the evidence showed the defendant directed a coconspirator other than the confidential source); *United States v. Vargas-Soto*, 700 F.3d 180, 183–84 (5th Cir. 2012) (no plain error in applying a § 2L1.2 enhancement based on one of defendant's convictions because, even if that was error, another conviction that the district court did not rely on supported the same enhancement).

[11] To support its view that the district court here also applied a wrong test, the dissent contends that the district court failed "to analyze Gehrmann's relative culpability for the tax fraud scheme as compared to other members of the scheme." Dissenting Op. at 4. As throughout the dissent, this ignores Dr. Gehrmann's (and Dr. Carlson's) role compared to Dr. Davis's. *Id.* at 14–15.

15

resentencing. *Id.* at 445–46. Instead, we examined whether the district court would have awarded a mitigating-role adjustment if correctly applying § 3B1.2. *Id.* at 446–47. Only after seeing that the district court had acknowledged that the wife bore less culpability than the husband did we remand. [12] *Id.* at 447. The lesson is clear: It is not enough to show a mistake by the district court; a defendant must show a reasonable probability of success on remand. [13]

### a.  *Dr. Gehrmann as an organizer*

Though the district court imposed two levels under § 3B1.1(c), and twice recited that any of the four listed statuses (leader, organizer, manager, or supervisor) activate that subsection, the dissent accuses us of inventing an issue by considering under the plain-error standard whether Dr. Gehrmann acted as an organizer. Dissenting Op. at 10. This suffers a big problem. Dr. Gehrmann himself has briefed his position about why he should not qualify as an organizer, and the government has

---

[12] *See also United States v. Davis*, 339 F.3d 1223, 1227 (10th Cir. 2003) (noting that we may "affirm the rulings of the lower court on any ground that finds support in the record" (citations and internal quotation marks omitted)); *United States v. Taylor*, 97 F.3d 1360, 1364 (10th Cir. 1996) (noting that, despite the district court's failure to make specific findings on an issue, "we may address it because 'we are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court'" (quoting *Griess v. Colorado*, 841 F.2d 1042, 1047 (10th Cir. 1988))).

[13] The dissent contends that our approach is distinguishable from *Yurek*'s, because there we relied on the district court's "explicit finding" to conclude that the wife satisfied prong three. Dissenting Op. at 9. But the dissent ignores that in *Yurek*, this "explicit finding" contradicted the sentencing decision the district court had made. 925 F.3d at 447. The dissent points to no district-court findings showing that it would not have applied § 3B1.1 if evaluating Dr. Gehrmann as an organizer, and we see none.

16

responded with reasons why he should. Appellant's Opening Br. at 8–9, 11–12, 14–15; Br. for Appellee at 10, 23–26. And Dr. Gehrmann has not complained that the district court failed to find that he qualifies as an organizer. *Cf. United States v. Wilfong*, 475 F.3d 1214, 1219 (10th Cir. 2007) ("Although the district court did not specifically find that Wilfong organized or led his co-conspirators," the findings showed "at a minimum, Wilfong was properly subjected to an adjustment under § 3B1.1(a) for his role as an organizer in the conspiracy.").

Dr. Gehrmann misperceives what it takes to show he was an organizer of the criminal activity. He argues that to be an organizer "requires control and a hierarchy among the participants in the conspiracy toward the commission of the offense." Appellant's Opening Br. at 11. But no such control is necessary to qualify as an organizer. *See United States v. Valdez-Arieta*, 127 F.3d. 1267, 1271 (10th Cir. 1997); *see also Marquez*, 833 F.3d at 1222–23 ("To qualify as an organizer . . . no control is necessary." (omission in original) (quoting *United States v. Wardell*, 591 F.3d 1279, 1304 (10th Cir. 2009)) (internal quotation marks omitted)).

The district court's findings as supplemented by undisputed facts show that Dr. Gehrmann acted as an organizer—and that he has not shown a reasonable probability that he would be resentenced without the two levels for his aggravating role as an organizer. Specifically, as noted, the district court found that "this thing was cooked up between Carlson, Gehrmann, Davis later joined in[.]" Appellant's App. vol. III at 628:24–629:1. In this kernel lies the reason Dr. Gehrmann qualifies as an organizer under § 3B1.1—he organized the criminal activity with Dr. Carlson, and

17

those two recruited Dr. Davis into the criminal activity. Further, he and Dr. Carlson "coordinat[ed] and overs[aw] the implementation of the conspiracy[.]" *Wardell*, 591 F.3d at 1304 (quoting *Valdez-Arieta*, 127 F.3d at 1272) (internal quotation marks omitted); *see also United States v. Levine*, 983 F.2d 165, 168 (10th Cir. 1992) ("To find that a defendant was an organizer or leader under § 3B1.1, we consider defendant's recruitment of accomplices, control over accomplices, organizing the enterprise and exercising decision-making authority." (citations omitted)).

No one challenges these underlying facts, and the background section of this opinion pulls from the record to establish each conclusively. Yet the dissent accuses us of stepping outside our appellate role and finding facts.[14] But this ignores the court's role when reviewing under the plain-error standard. Our plain-error cases involving § 3B1.1 demonstrate this.

For instance, in *Uscanga-Mora*, a drug defendant appealed his sentence, arguing that the district court had not adequately explained its reasons for applying a two-level adjustment under § 3B1.1(c). 562 F.3d at 1292–93. The district court had simply concluded that "sufficient evidence" supported the defendant's status as "either an organizer, leader, manager or supervisor in this activity." *Id.* at 1292.

---

[14] As we consider the organizer issue, it is worth remembering that for small conspiracies like this one, the divisions between leader, organizer, manager, and supervisor are not so ironclad: "In relatively small criminal enterprises that are not otherwise to be considered as extensive in scope or in planning or preparation, the distinction between organization and leadership, and that of management or supervision, is of less significance than in larger enterprises that tend to have clearly delineated divisions of responsibility." U.S.S.G. § 3B1.1 cmt. background.

Because the defendant had raised no concern with the procedural adequacy of the explanation in the district court, we reviewed for plain error. *Id.* at 1293. We ruled that the defendant could not show "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *Id.* at 1295 (quoting *Cook*, 550 F.3d at 1298) (internal quotation marks omitted). We concluded that "[w]hatever the perceived inadequacy of the district court's recitation of its reasons, the district court's sentencing decision was amply supported by evidence the government proffered at sentencing-evidence that was neither contested nor countered by the defense." *Id.* Because the defendant "received a sentence merited by the evidence," and because we could not say that but for the claimed error the sentence would be different, we affirmed. *Id.* (citations omitted); *see also Marquez*, 833 F.3d at 1220–23 (reviewing a procedural adequacy-of-findings appeal on plain error for a § 3B1.1(c) adjustment, in which the district court applied the adjustment on "significant evidence," and affirming after reviewing the record evidence and concluding it supported the adjustment).[15]

The dissent also protests that we have failed to consider Dr. Gehrmann's responsibility in relation to his coconspirators'. Dissenting Op. at 14–15. The dissent contends that Dr. Gehrmann is no more responsible than Dr. Carlson. *Id.* This may well be so. After all, the district court thought "Dr. Carlson and Dr. Gehrmann were

---

[15] *See also Taylor*, 97 F.3d at 1363–65 (affirming drug sentence despite district court's not finding supporting relevant conduct under § 1B1.3(a)(2) after finding enough evidence in the record to support such a finding).

19

in this together up to their elbows," and it was unsure it could "draw a big distinction between the two." Appellant's App. vol. III at 667:6–8. But here is what matters—both of them are more responsible than another participant, Dr. Davis, whom they recruited into the tax-fraud conspiracy they created. If the dissent is saying that Dr. Gehrmann cannot qualify for an aggravating role unless he is the sole person to do so, its position runs afoul of the Guidelines' command: "There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." U.S.S.G. § 3B1.1 cmt. n.4; *see also United States v. Snow*, 663 F.3d 1156, 1163 (10th Cir. 2011) (upholding § 3B1.1(c) adjustment because defendant's conduct met criteria to deem him an organizer and noting that, "[e]ven if his son met many of these criteria as well, as previously noted more than one person may qualify as an organizer of a criminal conspiracy").

Finally, the dissent contends that defendants qualifying as supervisors or managers "tend to profit more from [the criminal activity] and present a greater danger to the public and/or are more likely to recidivate." Dissenting Op. at 17 (quoting U.S.S.G. § 3B1.1 cmt. background) (internal quotation marks omitted). But this is just one factor among many, and the aggravating-role status matters less here where the criminal enterprise is small. U.S.S.G. § 3B1.1 cmt. background. Second, the dissent emphasizes the district court's application of the 18 U.S.C. § 3553(a) factors—Dr. Gehrmann's community support and lack of criminal history. Dissenting Op. at 17. But these considerations are no more relevant to this appeal than is the district court's being most troubled by Dr. Gehrmann's "never accept[ing]

20

responsibility in a meaningful way for what happened." Appellant's App. vol. III at 674:17–18. All those factors together led the court to vary downward, but they do not bear on the aggravating-role determination.

**II.     The District Court Had Sufficient Evidence to Support Enhancing Dr. Gehrmann's Sentence Under § 3B1.1(c).**

Dr. Gehrmann asserts that there is insufficient evidence to sustain his § 3B1.1(c) adjustment. Because Dr. Gehrmann preserved this objection by objecting to "either subsection," *id.* at 621:10–11, we review the district court's decision to apply the adjustment for clear error and will affirm if its "account of the evidence is plausible in light of the record viewed in its entirety," even if we "would have weighed the evidence differently[,]" *Uscanga-Mora*, 562 F.3d at 1296 (quoting *United States v. Spears*, 197 F.3d 465, 469 (10th Cir. 1999)) (internal quotation marks omitted). As spelled out in this opinion, we conclude that the district court had sufficient information to apply the adjustment based on Dr. Gehrmann's qualifying as an organizer. Thus, this challenge also fails.

### CONCLUSION

Accordingly, we affirm Dr. Gehrmann's sentence.

19-1145, United States v. Gehrmann
**LUCERO**, J., dissenting:

I agree with the majority that the district court plainly erred by failing to explain its reasons for imposing an enhancement under U.S.S.G. § 3B1.1(c). I disagree, however, with the majority's conclusion that Gehrmann failed to satisfy the third prong of plain error review. I would instead hold that Gehrmann has established a "reasonable probability that, but for the error claimed, the result of the proceeding would have been different." United States v. Marquez, 833 F.3d 1217, 1221 (10th Cir. 2016) (quotation omitted).

In concluding otherwise, in what amounts to improper de novo review, the majority proceeds—on appeal—to raise for the first time in this case the issue of "organizer" of the tax fraud scheme. And as an initial proposition, it makes its own findings to declare Gehrmann an organizer under the Sentencing Guidelines. The district court did not even consider the issue, let alone make any findings to that effect. Under these circumstances, our precedents require us to remand for the district court to make specific findings in support of its sentencing calculation.

By making a factual finding for the first time on appeal with respect to an issue the district court did not even consider, the majority oversteps our role as an appellate court and encroaches upon the district court's domain. The majority also fails to properly conduct the aggravating-role inquiry under § 3B1.1(c). For these reasons, I respectfully dissent.

# I

I agree with the majority that our review in this appeal is for plain error. Regarding the first two prongs of plain-error analysis, Gehrmann must establish (1) error that is (2) plain. See United States v. Uscanga-Mora, 562 F.3d 1295 (10th Cir. 2009). In United States v. Chisum, 502 F.3d 1237 (10th Cir. 2007), we recognized as error the district court's failure to "make specific findings and advance a factual basis to support an enhancement under U.S.S.G. § 3B1.1." Id. at 1242. We have also observed that "even if the record evidence overwhelmingly supports the enhancement, appellate fact-finding cannot substitute for the district court's duty to articulate clearly the reasons for the enhancement." United States v. Wacker, 72 F.3d 1453, 1477 (10th Cir. 1995); see also United States v. Pelliere, 57 F.3d 936, 940 (10th Cir. 1995) (observing that absent factual findings by the district court, the reviewing court is left "to flounder in the zone of speculation" (quotation omitted)).

In Wacker, the district court "found that Edith Wacker was a manager or supervisor (but not an organizer or leader) and imposed a three-level enhancement under U.S.S.G. § 3B1.1(b)." 72 F.3d at 1476 (quotation omitted).[1] On appeal, we vacated

---

[1] Section 3B1.1 provides:

(a)     If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b)     If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

Wacker's sentence and remanded because the district court failed to make specific findings in support of the enhancement. 72 F.3d at 1477. We noted that our precedents "emphasize that an enhancement based on the defendant's role in the offense will stand only if the record contains a clear picture of the reasoning employed by the sentencing court." Id. (quotation omitted). The district court, however, "made no findings of Edith Wacker's role as a manager or supervisor, nor did it refer to any factors or evidence by which we could review any such findings had they been made." Id.

As did the district court in Wacker, the trial court in this case (1) did not consider Gehrmann's role as an organizer in the scheme, (2) failed to make any findings regarding Gehrmann's role under § 3B1.1, and (3) did not refer to any factors or evidence by which we could review any such findings had they been made. Instead, the district court made a conclusory statement that Gehrmann "was at a minimum a manager or supervisor in th[e] criminal activity." The majority agrees, explaining that this failure to provide a sufficient factual basis for applying the § 3B1.1(c) enhancement satisfies the first two prongs of plain error review. (Maj. Op. 13-14.)

The third and fourth prongs are also satisfied. With respect to the third prong, Gehrmann must show prejudice—that is, "a reasonable probability sufficient to undermine confidence in the outcome at h[is] sentencing." United States v. Yurek, 925

_____

(c)    If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

Id.

3

F.3d 423, 446 (10th Cir. 2019). "[T]he district court's application of the wrong test" satisfies this standard if it leads the court to calculate the defendant's sentence from the wrong starting point. Id. at 446-47; see also United States v. Sabillon-Umana, 772 F.3d 1328, 1333 (10th Cir. 2014) ("When the court's starting point is skewed a reasonable probability exists that its final sentence is skewed too." (quotation omitted)).

In this case, the district court failed to conduct the proper inquiry in determining whether Gehrmann was a manager or supervisor under § 3B1.1(c). This error, in turn, skewed the calculation of Gehrmann's sentence. The court was required to analyze Gehrmann's relative culpability for the tax fraud scheme as compared to other members of the scheme. As provided in the section's commentary, the "primary" purpose of a § 3B1.1 enhancement is to reflect the greater responsibility of a defendant relative to other participants in the scheme:

> This section provides a range of adjustments to increase the offense level based upon the size of a criminal organization (i.e., the number of participants in the offense) and the degree to which the defendant was responsible for committing the offense. This adjustment is included primarily because of concerns about relative responsibility. However, it is also likely that persons who exercise a supervisory or managerial role in the commission of the offense tend to profit more from it and present a greater danger to the public and/or are more likely to recidivate. The Commission's intent is that this adjustment should increase with both the size of the organization and the degree of the defendant's responsibility.

§ 3B1.1 cmt. background (emphasis added); see also United States v. Miller, 868 F.3d 1182, 1188 (10th Cir. 2017) ("[U]nless the commentary violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline, we treat it as binding and authoritative." (quotation omitted)). But instead of analyzing

4

Gehrmann's specific role in the tax fraud scheme and his relative culpability as compared to his co-conspirators, the record reflects that the district court appears to have focused solely on the number of individuals involved in the scheme to determine which of § 3B1.1's three tiers applied. It thus failed to conduct the relevant inquiry with respect to whether Gehrmann was a manager or supervisor—or, for that matter, an organizer.[2] This error led the district court to increase Gehrmann's base offense level, resulting in a higher guidelines range. The district court failed to make specific, comparative findings that Gehrmann was a manager or supervisor of the criminal scheme, and there is no indication in the record that it would have found Gehrmann was a manager or supervisor under § 3B1.1 had it applied the correct test. Thus, applying Yurek and Sabillon-Umana, the third prong of plain error review is satisfied.[3]

As for the fourth prong, Gehrmann must show that the district court's error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Bustamante-Conchas, 850 F.3d 1130, 1137 (10th Cir. 2017) (en banc). We have held that "[w]hen an error affects the calculation of a defendant's guideline range, the fourth prong is ordinarily satisfied when the first three prongs are satisfied."

---

[2] I agree with the majority that it was proper for the district court to determine the number of participants in the scheme. (See Maj. Op. 9 n.5.) But the court's task did not end there; it was also required to assess Gehrmann's specific role in the scheme, irrespective of the number of participants in it. The majority does not appear to disagree.

[3] The majority contends that Chisum, Wacker, and Pelliere "are important for the first two prongs of the plain-error analysis, but provide no help on the third." (Maj. Op. 14 n.9.) As is evident here, I rely on those three cases for the first two prongs of plain-error review. My analysis for the third prong relies on Yurek and Sabillon-Umana.

<u>Yurek</u>, 925 F.3d at 447. This is because a reasonable citizen would "bear a rightly diminished view of the judicial process and its integrity if courts refused to correct obvious errors of their own devise that threaten to require individuals to linger longer in federal prison than the law demands . . . ." <u>Id.</u> (quotation omitted). As explained, the district court's plainly erroneous application of the § 3B1.1(c) enhancement led it to increase Gehrmann's base offense level. Because the court's error thus affected its sentencing calculation, the fourth prong of plain error review is satisfied. <u>Id.</u>

All four prongs having been met, I would vacate Gehrmann's sentence and remand this case for resentencing. The majority disagrees. Instead of addressing the district court's findings with respect to the conclusion that Gehrmann was a manager or supervisor, the majority concludes that Gehrmann did not satisfy the third prong of plain error review because the record independently demonstrates that he was an "organizer" under § 3B1.1(c). (Maj. Op. 17.) As expanded above, the district court did not analyze the organizer issue and did not make findings on point.

The word "organizer" appears sparsely in the record. It came up in the district court's brief description of the enhancement sought by the Probation Office, as well as in the court's acknowledgement that the Probation Office did <u>not</u> believe Gehrmann was an organizer. It also arose in the context of the court's conclusion that § 3B1.1(c) applies based on the number of participants in the scheme and in the court's conclusory statement that Gehrmann "was at a minimum a manager or supervisor in th[e] criminal activity." Elsewhere, the word appears in the government's statement at the sentencing hearing that Gehrmann was undoubtedly "an organizer, leader, manager, and supervisor"—but even

6

there, counsel focused her argument on the number of participants in the criminal scheme and Gehrmann's role in his chiropractic practice, not his precise role in the criminal scheme. Finally, the Presentence Investigation Report ("PSR") uses the word in a sentence stating that Gehrmann was <u>not</u> an organizer.

It is thus clear from the record that the district court did not consider whether Gehrmann was an organizer under § 3B1.1(c). The majority asserts that the district court considered whether Gehrmann was an organizer because it "more than once stated that an organizer qualifies under § 3B1.1(c)." (Maj. Op. 9 n.6.) But the district court's general recognition that "organizer qualifies under § 3B1.1(c)" says nothing about whether Gehrmann, specifically, was an organizer. None of the district court's brief and fleeting mentions of the word "organizer" involved an inquiry about Gehrmann's role in the tax fraud scheme. Rather, they merely concerned which of § 3B1.1's three tiers were on the table due to the number of participants in the scheme. Accordingly, by concluding that Gehrmann was an organizer, the majority raises a question not considered by the district court and proceeds to make factual findings inconsistent with the only quasi-evidentiary references to the contrary in the record. Our precedents do not condone such an approach.

In <u>Marquez</u>, the district court plainly erred by failing to explain its reasoning for applying an enhancement under § 3B1.1. 833 F.3d at 1221. It offered only the conclusory statement that the defendant was a leader or organizer. <u>Id.</u> We upheld this plainly erroneous determination by consulting the record to determine whether the evidence supported the trial court's conclusion that the defendant "was an organizer or

7

leader." Id. at 1222. We ultimately determined that "[a]lthough the district court did not make factual findings at the sentencing hearing, it did appropriately focus on the facts pertaining to" whether the defendant was a leader or organizer. Id. at 1222. This led to the conclusion that the defendant did not satisfy the third prong of plain error. Id.

In Uscanga-Mora, the error was also in the trial court's failure to explain its reasoning. The district court in that case offered only the conclusory statement that "the defendant was either an organizer, leader, manager or supervisor." 562 F.3d at 1292. Again, we affirmed by consulting uncontested facts "that Mr. Uscanga-Mora led, managed, or supervised at least his cousin, Mr. Uscanga-Cano, in criminal activity." Id. at 1296 (quotation omitted). We did not affirm the district court on a basis it failed to consider.

By contrast, the district court in this case did not find that Gehrmann was an organizer—it "found" only that he was a manager or supervisor. Unlike in Marquez and Uscanga-Mora, there is no indication that the district court even considered whether Gehrmann was an organizer. By finding that he was an organizer for the first time on appeal, the majority oversteps our role as an appellate court. See Wacker, 72 F.3d at 1477 ("[I]t is not this court's role to make the factual findings necessary to support a sentencing calculation; that is the role of the district court." (quoting United States v. Roberts, 14 F.3d 502, 523 (10th Cir. 1993)).

The majority asserts that its approach is similar to the approach followed in Yurek. (See Maj. Op. 15.)[4] Not so. As the majority observes, Yurek involved a husband and wife prosecuted for tax evasion and bankruptcy fraud. 925 F.3d at 444. The district court explicitly found that Mrs. Yurek was not eligible for a mitigating-role adjustment under § 3B1.2. Id. But it did not assess her culpability relative to her husband, as required under § 3B1.2. The court did, however, grant Mrs. Yurek a "downward variance based in part on its view that Mrs. Yurek bore less culpability than her husband." Id. at 447. Relying solely on this explicit finding, the panel reasoned that had the court applied the correct test, it would have granted her a mitigating-role adjustment under § 3B1.2. Id. By contrast, the district court in this case made no express finding that we could use to conclude that it would have found Gehrmann was an organizer had it applied the correct test.[5]

Moreover, the majority's reliance on Yurek to find for the first time that Gehrmann was an organizer is inconsistent with plain error review. As we explained in

---

[4] The majority relies primarily on an out-of-circuit opinion, United States v. Belfrey, 928 F.3d 746 (8th Cir. 2019), and on several unpublished Fifth Circuit cases. (See Maj. Op. 14-15 & n.10.) For the reasons set forth in this dissent, to the extent these out- of-circuit cases permit appellate courts to make findings of fact related to an issue not considered by the trial court, they are not persuasive.

[5] The majority appears to admit as much. It agrees that the district court failed to "make specific findings and 'advanc[e] a factual basis' to support" Gehrmann's § 3B1.1(c) enhancement. United States v. Ivy, 83 F.3d 1266, 1292 (10th Cir. 1996) (alteration in original) (quoting Wacker, 72 F.3d at 1477). (Maj. Op. 13.) Notably, the majority fails to identify in the record specific facts showing that Gehrmann was a manager or supervisor.

Uscanga-Mora, "[a] district court alerted to the potential inadequacies of its statement of reasons at sentencing is often in a position to remedy them easily and quickly." Id. at 1294. My respected colleagues in the majority miss the point: there never was an opportunity for Gehrmann to object to a conclusory statement that he was an "organizer" because the trial court never made such a statement. There was never an opportunity for Gehrmann to object to a finding that he was an organizer because the district court never made such a finding.[6] The only evidentiary basis that the record contains on that point is the statement of the Probation Office expressly to the contrary. Respectfully, the "organizer" issue is an invention by the majority.[7] This is why I refer to the majority's review as improper de novo review.

The majority protests that it is not making factual findings. It asserts that "[t]he district court's findings as supplemented by undisputed facts show that Dr. Gehrmann

---

[6] The majority makes much of the fact that Gehrmann did not object to the district court's conclusory assertion that he was a manager or supervisor. (Maj. Op. 9 n.6.) This is irrelevant to whether Gehrmann was an "organizer" or to the district court's failure to make such a finding. Perplexingly, the majority also faults Gehrmann for "not complain[ing] that the district court failed to find that he qualifies as an organizer." (Maj. Op. 17.) But Gehrmann had nothing to object to—he had no duty or reason to complain about the absence of an unfavorable finding. Instead of explaining this puzzling assertion, the majority cites an inapposite case involving an express finding that the defendant was an organizer and an explicit objection to that finding. See United States v. Wilfong, 475 F.3d 1214, 1219 (10th Cir. 2007).

[7] The majority observes that the parties briefed the organizer issue on appeal. (See Maj. Op. 16-17.) That is immaterial. "It is clear in this circuit that absent extraordinary circumstances, we will not consider arguments raised for the first time on appeal. This is true whether an appellant is attempting to raise a bald-faced new issue or a new theory on appeal that falls under the same general category as an argument presented at trial." McDonald v. Kinder-Morgan, Inc., 287 F.3d 992, 999 (10th Cir. 2002) (quotations omitted). Whether Gehrmann is an organizer falls into the latter category.

10

acted as an organizer." (Maj. Op. 17.) This is a finding. The fact that it is purportedly based on two things—the "district court's findings" and "undisputed facts"—does not mean it is not a de novo factual determination. The majority acknowledges that the district court made a finding of fact when it determined that Gehrmann was a manager or supervisor. (See Maj. Op. 13 ("We agree that the district court's findings do not meet our requirement that it must make specific findings and advance a factual basis to support an enhancement under U.S.S.G. § 3B1.1." (quotation and alteration omitted) (emphasis added)).) The majority does the same when it finds that Gehrmann is an organizer.

In sum, because the district court applied the wrong test in determining whether Gehrmann was eligible for the § 3B1.1(c) enhancement, and because this plain error affected the court's calculation of his sentence, I would conclude that all elements of our plain error review have been satisfied. Accordingly, I would vacate the sentence and remand for resentencing. The majority's affirmation of the erroneous decision of the district court oversteps our role as a court of appeals and is not condoned by our precedents.

## II

I would not reach the merits of the "organizer" issue, and I respectfully fault my colleagues for doing so. But even if this were a case where we could affirm the district court on alternative grounds, the majority's attempt to do so is flawed.

Purporting to rely on "[t]he district court's findings as supplemented by undisputed facts," the majority finds that Gehrmann was an organizer of the tax fraud scheme he conducted with his fellow chiropractors, Carlson and Davis. (Maj. Op. 17.)

11

This finding lacks support. With respect to the district court's findings, the majority identifies one: the district court's statement that "this thing was cooked up between Carlson, Gehrmann, Davis later joined in[.]" (Maj. Op. 17.) This is not a finding; it is a conclusory assertion. Cf. Wacker, 72 F.3d at 1477 ("Our cases require the district court to make findings, not conclusions."). The majority recognizes as much by concluding that the district court failed to "advance a factual basis to support an enhancement under U.S.S.G. § 3B1.1." (See Maj. Op. 13 (citing Wacker, 72 F.3d at 1477).) Thus, the majority appears to contradict itself when it asserts the district court's statement "describes the very sort of activity qualifying one as an organizer." (Maj. Op. 9 n.6.) The district court's statement failed to advance a sufficient factual basis for finding Gehrmann to be a manager or supervisor, and it similarly does not advance a sufficient factual basis for the majority's finding that Gehrmann is an organizer.

With respect to the "undisputed facts" supplementing the district court's conclusory assertion, the majority completely ignores the only direct reference in the record to whether Gehrmann was an organizer: the PSR's express statement that he was not an organizer. The majority specifically recognizes that the "PSR[] characteriz[es] [Gerhmann] as a manager or supervisor of the criminal activity." (Maj. Op. 6.) But that is only half of the story. In the very same sentence, the PSR states: "Adjustment for

12

Role in the Offense: The defendant was a manager or supervisor (but not an organizer or leader)."[8]

The majority also insinuates it is undisputed that Gehrmann and Carlson recruited Davis into the tax fraud scheme. Focusing primarily on a business lunch in 2007, the majority picks several facts from the record concerning what the three chiropractors discussed over lunch. (See Maj. Op. 3.) Although these findings regarding what was discussed may be undisputed, this does not mean the majority's separate finding that Davis was recruited is undisputed.[9] The majority attempts to bridge its recitation of undisputed facts to its composite finding that Davis was recruited by asking, "How else did he get there?" (Maj. Op. 10 n.6) But this rhetorical question is not an explanation; it neither justifies the majority's finding nor disguises the fact that the majority is indeed making a finding of fact. The majority incorrectly assumes that because certain

_____

[8] The majority admits the PSR is not "authoritative" with respect to any status—manager, supervisor, leader, or organizer—under § 3B1.1. (Maj. Op. 6 n.3.) I agree. That point supports my contention that there is nothing in the record suggesting the district court would have found that Gehrmann was an organizer had it applied the correct test. And it does not detract from my conclusion that the "undisputed" facts on which the majority relies to find for the first time that Gehrmann was an organizer are cherry-picked from the record.

[9] For example, the majority notes that Davis testified it was "obvious" to him that Gehrmann and Carlson were engaged in a tax fraud scheme. But whether this was obvious to Davis does not bear on whether Gehrmann "recruited" Davis into the scheme. (See Maj. Op. 3 n.2.) Additionally, the record reflects that Davis repeatedly asserted before the district court that there was never any agreement formed to participate in a tax fraud scheme, either express or implied, either at or after the 2007 lunch. The majority contends that this fact is immaterial to whether Gehrmann was an organizer. (Maj. Op. 3 n.2.) But it is relevant to the majority's finding that Gehrmann recruited Davis, on which the majority relies to find that Gehrmann was an organizer. (See Maj. Op. 17-18.)

13

underlying facts are undisputed, its first-time finding that Gehrmann was an "organizer" is also indisputable.

Moreover, the majority erroneously focuses on Gehrmann and Carlson's direction of office staff in the course of conducting the tax fraud scheme. "To qualify for an adjustment under [§ 3B1.1], the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants" in the criminal scheme. § 3B1.1 cmt. n.2 (emphasis added). The district court found—and the majority does not disagree—that the only members of the tax fraud scheme were Gehrmann, Carlson, and Davis; their office staff did not participate. The majority's focus on Gehrmann and Carlson's coordination of office staff is therefore misplaced because it does not concern the organization, leadership, management, or supervision of other participants in the scheme.[10]

---

[10] The majority asserts that Gehrmann and Carlson's direction of non-participants is relevant to a § 3B1.1 enhancement, despite note 2's clear limiting language. In support, the majority relies on § 3B1.1 cmt. n.4, which lists "the nature of participation in the commission of the offense" as a factor for determining whether a person is an organizer. (Maj. Op. 8 n.4.) But the majority's reading of note 4 is overbroad, and its reliance on it is misplaced. Note 4 concerns "distinguishing a leadership and organizational role from one of mere management or supervision." § 3B1.1 cmt. n.4. And the majority's expansive reading of note 4 contradicts note 2's express instruction that "[a]n upward departure may be warranted . . . in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization." § 3B1.1 cmt. n.2 (emphasis added). Thus, a defendant's managerial actions that do not involve managing, supervising, leading, or organizing another criminal participant support a departure from § 3B1.1, not an application of it. See United States v. Darton, 595 F.3d 1191, 1194 (10th Cir. 2010) ("[A] departure only exists apart from the applicable guideline range.").

14

The majority also ignores the purpose and exceeds the scope of § 3B1.1.  The "primary" purpose of a § 3B1.1 enhancement is to reflect the greater responsibility of a defendant relative to other participants in a criminal scheme. See § 3B1.1 cmt. background. Yet the majority's findings regarding Gehrmann's role in the tax fraud scheme fail to compare Gehrmann's degree of responsibility with that of his co-conspirators. This itself is plain error—one we have not hesitated to reverse. See Yurek, 925 F.3d at 446-47.

Much of the majority's analysis concerns Gehrmann and Carlson together, without distinguishing their roles. The majority finds that Gehrmann and Carlson devised and implemented the tax fraud scheme and jointly recruited Davis into the scheme. (Maj. Op. 17-18.) The majority fails to consider, however, whether Gehrmann was more responsible than Carlson for conducting the scheme.[11] At best, the majority notes that Gehrmann "took over" accounting functions because he suspected that Carlson was not evenly disbursing the diverted funds. He also kept a "cookie jar" in his office storing the diverted funds and a "Secret Records" ledger recording them. Yet the majority does not compare Gehrmann's actions with those of Carlson or Davis or analyze the three chiropractors' relative degrees of responsibility.[12]

_____

[11] By claiming that I "contend[] that Dr. Gehrmann is no more responsible than Dr. Carlson," the majority fundamentally misunderstands my analysis. (Maj. Op. 19.) I make no such contention. Instead, I fault the majority for failing to conduct a comparative analysis, irrespective of the outcome of that analysis.

[12] Observing that there can be more than one organizer of a criminal association or conspiracy, see U.S.S.G. § 3B1.1 cmt. n.4, the majority asserts "what matters" in this

15

Finally, I also note that the commentary to § 3B1.1 indicates the aggravating-role enhancement is premised on the assumption "that persons who exercise a supervisory or managerial role in the commission of the offense tend to profit more from it and present a greater danger to the public and/or are more likely to recidivate." § 3B1.1 cmt. background. But Gehrmann did not profit more from the tax fraud scheme than Carlson or Davis—they each received one-third of the diverted funds. Further, the district court expressly stated that Gehrmann had a complete lack of criminal history, posed no danger to the community, was not likely to recidivate, and had received "one of the most substantial outpourings of community support that [the court had] seen."

In sum, I disagree with the majority's conclusion that the record supports a finding that Gehrmann was an organizer. The majority's misapplication of the § 3B1.1 inquiry notwithstanding, whether Gehrmann was an organizer is a debatable issue of fact, and Gehrmann never had the opportunity to object to a finding that he was an organizer because the district court never made such a finding.

---

case is that Gehrmann and Carlson were more responsible than Davis for the criminal scheme because they recruited him into it. (Maj. Op. 20.) As explained above, it is disputable that Gehrmann recruited Davis into the scheme. Moreover, it does not logically follow that Davis bears less responsibility for the tax fraud scheme than Gehrmann or Carlson merely because he entered the scheme later. And finally, the majority's observation does not cure its failure to conduct the proper inquiry under § 3B1.1(c). The majority discusses at length Gehrmann and Carlson's involvement in the scheme, but not Davis'. Its analysis is therefore erroneous because it is one-sided and not comparative. See Yurek, 925 F.3d at 446-47.

16

## III

For the foregoing reasons, I would vacate Gehrmann's sentence and remand for the district court to make specific findings in support of its application of the § 3B1.1(c) enhancement.