**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**August 12, 2016**

**UNITED STATES COURT OF APPEALS**

**Elisabeth A. Shumaker**
**Clerk of Court**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

ERNEST JOE MARQUEZ,

      Defendant - Appellant.

No. 14-2193

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 2:12-CR-01167-RB-4)**
_____

Todd A. Coberly, Coberly & Martinez, LLLP, Santa Fe, New Mexico, for Defendant-Appellant.

Richard C. Williams, Assistant United States Attorney (Damon P. Martinez, United States Attorney, with him on the brief), Office of the United States Attorney, Las Cruces, New Mexico, for Plaintiff-Appellee.

_____

Before **BRISCOE**, **EBEL**, and **BACHARACH**, Circuit Judges.
_____

**EBEL**, Circuit Judge.
_____

Defendant-Appellant Ernest Marquez challenges the two-level sentence enhancement imposed under United States Sentencing Guideline § 3B1.1(c) for his role as an organizer, leader, manager, or supervisor in criminal activity. We affirm.

# I.    BACKGROUND

A jury convicted Marquez of three drug charges, including, as relevant to this appeal, possession with intent to distribute fifty grams or more of methamphetamine ("meth") in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B).  The testimony and evidence at trial showed that Marquez obtained the meth in question by arranging for two women—Veronica Hernandez and Belinda Galvan—to drive from Las Cruces, New Mexico, to the vicinity of Tucson, Arizona, exchange money he had provided them for a brick of meth, and deliver the meth to him back in Las Cruces.

Specifically, Hernandez testified that Marquez asked her to go to Arizona with Galvan and "pick something up" for him.  Supp. R. vol. VI at 106.  Hernandez agreed that she "should have known" that Marquez was referring to drugs.  Id.  After all, Marquez had previously asked her to take a trip to Arizona with Galvan, during which trip the two women knowingly obtained cocaine in Arizona and transported it to Michigan.

In addition, Hernandez and Scott Wetherholt—a drug dealer who often bought meth from Marquez—testified about a series of phone calls and text messages made by Marquez regarding the trip.  Marquez discussed with Wetherholt his plans to buy one pound of meth from Arizona for $3000.  The morning of Hernandez's trip, Marquez sent a series of text messages to Wetherholt attempting to raise funds for the purchase.  Around noon that day, Marquez called the supplier in Arizona from whom he had arranged to purchase the meth.  That same supplier had provided Hernandez

2

and Galvan the cocaine to transport on their previous trip. Marquez told the supplier that he was "going to get the girls ready" for their trip.  Hernandez testified that by "the girls" Marquez meant her and Galvan. Id. at 75.

That afternoon, Marquez and Hernandez discussed her upcoming trip to Tucson.  Shortly thereafter, Hernandez called Marquez to tell him that she was leaving to pick up Galvan in her car.  That evening, Marquez told Hernandez that he was "getting the rest of the money together" so that she and Galvan could leave for Tucson. Id. at 71.

Later that night, Galvan called Marquez to tell him that on the way to Arizona she and Hernandez had been stopped at a Border Patrol checkpoint.  Marquez asked if Hernandez's car had been searched. Although it had been searched, the Border Patrol agents had allowed the women to keep the $2300 they were transporting. Marquez told the women that they should take a different route on their return trip to Las Cruces, presumably to avoid further Border Patrol checkpoints.

In Arizona, Hernandez and Galvan met with the supplier, who gave them a container holding a one-pound brick of meth.  Hernandez and Galvan drove the meth back to Las Cruces, dropped it off at Hernandez's apartment, and then drove to meet Marquez at his home.  On their way, they stopped at a fast-food restaurant because Marquez had told them to buy him something to eat.  At the meeting, Marquez and the two women discussed what had happened during the trip.  After the meeting, Galvan returned to Hernandez's apartment and retrieved the brick of meth to deliver to Marquez at his home.

3

At sentencing, the government requested a two-level enhancement pursuant to Sentencing Guideline § 3B1.1(c) for Marquez's role as an organizer, leader, manager, or supervisor of the two women couriers who purchased and delivered the meth. After hearing argument on the matter, the district court ruled

> I've—as I've indicated, I've read all the materials and [defense counsel], on the legal issue, I think that there is significant evidence for me to find that Mr. Marquez was, in fact, a leader/organizer, at the two-level—at the two-level level. So I think that probation has gotten that right.

Supp. R. vol. VIII at 15-16. Marquez's counsel did not object to the procedural adequacy of that explanation at the time. The district court then proceeded to impose a below-Guidelines sentence of 130 months. Before adjourning the hearing, the district court inquired whether either counsel had "[a]nything else this morning?" to discuss. Id. at 25. Marquez's counsel again failed to raise a procedural objection to the district court's explanation concerning the § 3B1.1 enhancement. Marquez now appeals that enhancement.

## II.    DISCUSSION

On appeal, Marquez challenges the procedural reasonableness of his § 3B1.1 enhancement. He argues, first, that the district court did not clearly articulate the reasons for imposing the enhancement, and, second, that the enhancement is not supported by sufficient evidence. He cannot prevail on either ground.

### A. Procedural challenge

4

Because Marquez's counsel did not raise a procedural objection at the sentencing hearing, his procedural challenge is reviewed for plain error.[1] See United States v. Uscanga-Mora, 562 F.3d 1289, 1293 (10th Cir. 2009) (reviewing a procedural challenge to a § 3B1.1(c) enhancement for plain error because "we have consistently held plain error review obtains when counsel fails to render a contemporaneous objection to the procedural adequacy of a district court's statement of reasons at sentencing"). "Our plain error standard is satisfied when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 1295 (quotation omitted).

---

[1] Marquez contends plain error review is inapplicable because his counsel was not given an opportunity to raise a procedural objection. See United States v. Uscanga-Mora, 562 F.3d 1289, 1294 (10th Cir. 2009) ("[T]he federal rules provide for plain error review only when counsel has been given, but has not taken advantage of, an opportunity to voice his or her objection . . . ."). The district court, however, specifically inquired before adjourning the hearing whether counsel had "[a]nything else this morning" to address. Supp. R. vol. VIII at 25. That inquiry provided Marquez's counsel a sufficient opportunity to register an objection. See United States v. Steele, 603 F.3d 803, 807 (10th Cir. 2010) (holding that "a trial judge is not required to specifically elicit objections after announcing a sentence," and finding that a judge's closing question of whether there was "anything further" to address constituted the requisite "fair opportunity to register an objection").

Furthermore, contrary to Marquez's contention, the fact that the district court's inquiry came after Marquez's sentence had been pronounced did not render it any less of an opportunity to object; after all, the district court still could have remedied any procedural defect identified at that time. See United States v. Luna-Acosta, 715 F.3d 860, 865-66 (10th Cir. 2013) (holding that district courts can freely correct their initial oral sentencings at any point before the sentencing hearing is adjourned); see also United States v. Gantt, 679 F.3d 1240, 1246-47 (10th Cir. 2012) (noting that procedural challenges "ordinarily would require an objection after the court had rendered sentence").

As to the first two prongs, it is well-settled that a district court "'must make specific findings and advance a factual basis to support an enhancement under U.S.S.G. § 3B1.1.'" United States v. Chisum, 502 F.3d 1237, 1242 (10th Cir. 2007) (quoting United States v. Ivy, 83 F.3d 1266, 1292 (10th Cir. 1996)). "'[E]ven if the record overwhelmingly supports the enhancement, appellate fact-finding cannot substitute for the district court's duty to articulate clearly the reasons for the enhancement.'" Id. (quoting Ivy, 83 F.3d at 1292).

In this case, the district court put forth no factual basis or reasoning for enhancing Marquez's sentence pursuant to § 3B1.1, but rather offered only the conclusory statement that "I think that there is significant evidence for me to find that Mr. Marquez was, in fact, a leader/organizer." Supp. Rec. vol. VIII at 15-16. Under our caselaw, that was error, and it was plain. See United States v. Wacker, 72 F.3d 1453, 1477 (10th Cir. 1995) ("Our cases require the district court to make findings, not conclusions.").

As to the third prong, "[t]o show that an error affected his substantial rights, Mr. [Marquez] must establish a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." Uscanga-Mora, 562 F.3d at 1295 (internal quotation marks omitted). In the context of sentencing enhancements, if "[t]he defendant . . . received a sentence merited by the evidence . . . we cannot say . . . that, but for the claimed error, the defendant's sentence would have been any different." Id. (affirming a § 3B1.1 enhancement because "[w]hatever the perceived inadequacy of the district court's recitation of its reasons, the district court's sentencing decision was amply supported by evidence the government proffered at sentencing").

6

A defendant such as Marquez qualifies for a two-level enhancement under § 3B1.1(c) if he "was an organizer, leader, manager, or supervisor in any criminal activity." U.S.S.G. § 3B1.1(c). To determine whether a defendant was an organizer or leader, the court may consider several factors, including "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." Id. cmt. n.4. However, "[t]he gravamen of the enhancement is either the exercise of control over other participants or the organization of others for the purpose of carrying out the crime." United States v. Tagore, 158 F.3d 1124, 1130-31 (10th Cir. 1998).

The evidence and testimony at trial showed that Marquez orchestrated the sale and transfer of one pound of meth from Arizona to New Mexico: He arranged the sale with his supplier in Arizona; he collected the money for the sale; he recruited Hernandez to drive her car to Arizona to pick up the meth; he assured his supplier that he was "going to get the girls ready" for the trip, and Hernandez explained that, by "the girls" he meant her and Galvan; he maintained phone contact with Hernandez and Galvan during their trip, including advising them how to avoid further Border Patrol searches; he debriefed Hernandez and Galvan at his home immediately after they returned from their trip; and he later had Galvan deliver the meth to him at his home. Supp. R. vol. VI at 75.

7

Although the district court did not make factual findings at the sentencing hearing, it did appropriately focus on the facts pertaining to the two woman couriers as the basis for the § 3B1.1 enhancement. See, e.g., Supp. R. vol. VIII at 8-9 ("[O]n the issue of leader/organizer, remind me about the facts relating to the two women that went to somewhere in Arizona to bring back—I think they went to bring back meth. And it seemed to me that Mr. Marquez was—they did that at his instance [sic]; they did that in phone contact with him throughout the trip. Am I remembering this correctly?"); id. at 10 ("But didn't they go at his behest? Whether he was a boss or that's how she characterized it, it seemed to me that they were going at his behest and he made the connection. Am I not remembering this correctly?").[2]

Accordingly, we conclude that Marquez's § 3B1.1 enhancement for his role as an organizer or leader in criminal activity was amply supported by the evidence. See Uscanga-Mora, 562 F.3d at 1295.

Marquez's arguments to the contrary are unavailing. Marquez contends he did not exercise control over Hernandez and Galvan because Hernandez testified that he was not "in charge of" her, and that she and Galvan did not follow his instructions to take a different route on the return trip. But even assuming, arguendo, that such

---

[2] We note that probation, in responding to Marquez's objections to the presentence report, based its recommendation for the enhancement on Marquez's drug sales to Wetherholt. That was error. It is well-established that buyer/seller and wholesaler/retailer relationships cannot provide the basis for a § 3B1.1 enhancement. See United States v. Torres, 53 F.3d 1129, 1143 (10th Cir. 1995); United States v. Sallis, 533 F.3d 1218, 1224 (10th Cir. 2008) ("[S]upplying drugs on credit, or fronting, without more, is not a basis for the enhancement."). The district court was correct to focus instead on the two women couriers.

testimony would preclude a finding that Marquez exercised some control over the two women couriers, it would not preclude a § 3B1.1 enhancement. "To qualify as an organizer . . . no control is necessary." United States v. Wardell, 591 F.3d 1279, 1304 (10th Cir. 2009). "Instead, a defendant may be deemed an organizer under § 3B1.1 for 'devising a criminal scheme, providing the wherewithal to accomplish the criminal objective, and coordinating and overseeing the implementation of the conspiracy even though the defendant may not have any hierarchical control over the other participants.'" Id. (quotation omitted). The evidence at trial supports the conclusion that Marquez—at the very least—coordinated and oversaw the meth purchase and transfer from Arizona, and therefore qualifies as an organizer under § 3B1.1.

Marquez also contends that the meth purchase cannot form the basis for a § 3B1.1 enhancement because it was a "one-off" incident. The idea that a single criminal endeavor does not trigger § 3B1.1 finds no support in our caselaw, and contradicts the plain language of that section, which applies to "any criminal activity," U.S.S.G. § 3B1.1(c) (emphasis added). We hold that sustained criminal conduct is not necessary for the enhancement to apply.

Because Marquez "received a sentence merited by the evidence," we cannot say—as we would have to in order to reverse his sentence for plain error—that his substantial rights were violated. Uscanga-Mora, 562 F.3d at 1295. Therefore, our inquiry into Marquez's procedural challenge ends here, and we need not reach the fourth prong of plain error review.

9

**B. Sufficiency of the evidence challenge**

We next turn to Marquez's sufficiency of the evidence challenge. The question of whether a defendant is a leader or organizer is a mixed question of law and fact that is subject to the clearly erroneous standard of review. United States v. Pena-Hermosillo, 522 F.3d 1108, 1112 (10th Cir. 2008). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Uscanga-Mora, 562 F.3d at 1296 (quotation omitted).

For the reasons we have already detailed above, see supra § II.A, we cannot say that the district court's determination that Marquez was an "organizer, leader, manager, or supervisor" was based on insufficient evidence. See United States v. Beltran, 571 F.3d 1013, 1020 (10th Cir. 2009) ("[I]n reviewing the court's decision to apply an enhancement, we view the evidence and inferences therefrom in the light most favorable to the district court's determination.") (quotation omitted). Because the evidence supports the district court's determination, Marquez's challenge must fail. See Uscanga-Mora, 562 F.3d at 1296-97.

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's imposition of the two-level § 3B1.1 sentencing enhancement.