FILED
United States Court of Appeals
Tenth Circuit

October 24, 2022

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

GEORGE BUSH, JR.,

    Defendant - Appellant.

No. 21-3071
(D.C. No. 2:18-CR-20025-DDC-1)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **KELLY**, and **PHILLIPS**, Circuit Judges.
_____

A jury convicted George Bush, Jr., of charges stemming from his role in a conspiracy to distribute heroin. The district court sentenced him to 210 months in prison. He asserts two challenges to his sentence.

First, he contends the district court should not have imposed a three-level enhancement under United States Sentencing Guideline ("U.S.S.G.") § 3B1.1(b) because it erred in determining that he acted as a manager or supervisor of a drug trafficking operation. He argues the court applied the wrong legal standard and provided an inadequate explanation.

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Second, he contests the district court's calculation of the drug quantity attributable to him—2.21 kilograms of heroin. He claims the court erroneously based about half of this amount on unreliable hearsay statements.

Exercising jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we affirm Mr. Bush's sentence.

## I.  BACKGROUND

### A. *Sentencing Guidelines*

To facilitate understanding of the factual and procedural history of this case, we start with an overview of the Sentencing Guidelines that are relevant to this appeal.

### 1. **Section 3B1.1**

Under the Sentencing Guidelines, a court may apply an enhancement "[b]ased on the defendant's role in the offense." U.S.S.G. § 3B1.1. Section 3B1.1 provides that the sentencing court may increase the offense level:

> (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
>
> (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
>
> (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

*Id.*

2

Section 3B1.1 "does not define the terms 'manager,' 'supervisor,' 'organizer,' or 'leader.'" *United States v. Zar*, 790 F.3d 1036, 1058 (10th Cir. 2015). But Application Note 4 lists seven factors that a sentencing court should consider "[i]n distinguishing a leadership and organizational role from one of mere management or supervision." § 3B1.1 cmt. 4. We quote them as follows:

1. the exercise of decision making authority,

2. the nature of participation in the commission of the offense,

3. the recruitment of accomplices,

4. the claimed right to a larger share of the fruits of the crime,

5. the degree of participation in planning or organizing the offense,

6. the nature and scope of the illegal activity, and

7. the degree of control and authority exercised over others.

*Id.*

We have interpreted the manager or supervisor role under § 3B1.1(b) as "requiring the defendant to exercise some degree of decision-making authority, control, or organizational authority over a subordinate participant in the offense." *Zar*, 790 F.3d at 1058 (quotations omitted).

2. **Section 2D1.1**

Under § 2D1.1, the drug quantity determines the base offense level for a drug trafficking offense. *See* U.S.S.G. § 2D1.1(a)(5), (c). For example, the base offense level is 28 for 0.7 to 1 kilograms of heroin, 30 for 1 to 3 kilograms, and 32 for 3 to 10 kilograms. *Id.* § 2D1.1(c)(4)-(6).

B. *Factual History*

In January 2017, the Kansas City, Missouri Police Department ("KCPD") learned that a man later identified as Albert Brown was selling heroin in Kansas City. Over the next ten months, KCPD and federal officers made controlled buys from Mr. Brown. Mr. Brown sometimes went to the buys alone. Sometimes he traveled with others, including Mr. Bush and Maurice Bluett.

Investigators learned of heroin distribution originating from Mr. Bush's father's residence in Kansas City, Kansas. After installing audio-visual surveillance equipment in the residence, they observed Mr. Bush and his co-conspirators prepare, package, store, and sell heroin there. They saw some occupants in possession of firearms. Mr. Bush participated in almost all of the drug activity at the residence, including preparing and weighing heroin and collecting and counting proceeds.

C. *Procedural History*

1. **Indictment, Trial, and Presentencing**

A grand jury indicted Mr. Bush and others for distributing and possessing with intent to distribute heroin. A superseding indictment included the following charges against Mr. Bush:

(1)  Conspiring to distribute and possess with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(i), and 846 (Count I);

(2)  Distributing heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) (Count II);

(3) Conspiring to knowingly use and maintain a house to distribute heroin, in violation of 21 U.S.C. § 856(a)(1), and managing a house for storing and distributing heroin, in violation of 21 U.S.C. § 856(a)(2) (Count III);

(4) Possessing with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), on four dates in October and November 2017 (Counts IV, V, VII, IIX); and

(5) Knowingly possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(2) (Count VI).

Only Mr. Bush proceeded to trial. A jury found him guilty on all four of the distribution counts but found him not guilty on the firearm charge.[1]

After trial, the Probation Office prepared a Presentence Investigation Report ("PSR"). Two of its recommendations are relevant here.

First, the PSR recommended a four-level enhancement under § 3B1.1(a), concluding that Mr. Bush was the organizer or leader of criminal activity involving five or more participants. It said Mr. Bush was an organizer or leader because (1) he sold larger quantities of heroin than his co-conspirators, (2) others never questioned his decisions, (3) he handled large amounts of money and turned over funds to another man who came to the house to collect, (4) he instructed Mr. Brown how to cook heroin, and (5) he directed a customer to contact Mr. Brown for future drug transactions.

---

[1] Based on Mr. Bush's unopposed motion, the district court later set aside the jury's guilty verdict on conspiring to maintain a premises for storing and distributing heroin (Count III) and acquitted Mr. Bush on that charge.

Second, the PSR said Mr. Bush was responsible for distributing 3.21 kilograms of heroin. That amount included (1) Mr. Bush's drug sales and (2) drug sales that he sourced but were made by his co-conspirators, Mr. Bluett and Mr. Brown. Based on Mr. Bluett's post-arrest statements that he sold about eight grams of heroin every three days for roughly two years, the PSR said that he sold 1.44 kilograms of heroin. It also said Mr. Brown sold approximately 180 grams to Blake Assel—sourced by Mr. Bush—based on Mr. Assel's interview with law enforcement.

Mr. Bush objected to both recommendations.

2. **Sentencing**

The district court held four days of sentencing hearings between August 2020 and April 2021. During the third and fourth hearings—the "December 2020 hearing" and the "April 2021 hearing"—the court addressed Mr. Bush's objections to the PSR.

a. *December 2020 hearing*

At the December 2020 hearing, the district court considered Mr. Bush's objection to the § 3B1.1(a) enhancement. It explained that § 3B1.1(a) applies when a defendant is "an organizer or leader of criminal activity that involved five or more participants." ROA, Vol. II at 2239. It determined that five or more participants were involved and that "it [was] plain . . . that [Mr. Bush] was one of two things: either an organizer-leader or a manager-supervisor." *Id.* at 2240.

The court then considered the factors in Application Note 4 to § 3B1.1 to determine whether Mr. Bush was an organizer/leader or manager/supervisor. It said the following factors favored the organizer/leader enhancement:

6

- Factor 1—exercise of decision-making authority—one co-conspirator said Mr. Bush "controlled the activity within [the house]." *Id.* at 2240-41;

- Factor 2—the nature of participation in the commission of the offense—the evidence was "fairly extensive" and "plainly establish[ed] involvement at multiple levels" because Mr. Bush "interacted with suppliers," "prepared heroin for sale," "collected [and dispensed] proceeds from drug trafficking activity," and "housed much of the drug trafficking organization's headquarters." *Id.* at 2241-42; and

- Factor 7—degree of authority and control over others—there was "nothing showing that [Mr. Bush] told others 'do this' or 'do that' in connection with drug trafficking activities." *Id.* at 2241.

The court said the following factors did not weigh in favor of the § 3B1.1(a)

enhancement:

- Factor 3—recruitment of accomplices—a customer asking Mr. Bush "if he needed runners" did not establish "that [Mr. Bush] actually recruited any accomplices" even though it slightly favored an inference that he "was the man to see if . . . someone wanted to be hired as an accomplice." *Id.* at 2243; and

- Factor 5—degree of participation in planning or organizing—there was "little explicit evidence of Mr. Bush announcing that the drug trafficking organization 'should do' or 'must do this,'" although his father's residence "housed the . . . inventory and provided a base where that inventory . . . was prepared for distribution." *Id.* at 2242.

Following its discussion of the relevant factors,[2] the court said:

> Consistent with [*United States v. Valdez-Arieta*, 127 F.3d 1267 (10th Cir. 1997)], . . . the government has not met its burden to sustain the four-level enhancement . . . . Instead, consistent with the holding in the *Valdez* case, the court concludes, as did the *Valdez* case, that the defendant may

---

[2] The court concluded that the sixth factor—the nature and scope of illegal activity—was neutral because neither party explained how it applied, and the court did not address the fourth factor—"the claimed right to a larger share of the fruits of the crime." U.S.S.G. § 3B1.1, cmt. 4.

> be punished as an organizer under Guidelines Section 3B1.1(c) for devising a criminal scheme, providing the wherewithal to accomplish the criminal objective, and coordinating and overseeing . . . the implementation of the conspiracy even though he may not have had any hierarchal control over other participants.
>
> So the court is sustaining the defendant's objection in part. The four-level enhancement under Guideline 3B1.1(a) is not warranted. But the court finds, based on the analysis and the facts already described, that a two-level application under Guideline section 3B1.1(c) is warranted.

*Id.* at 2244-45.

Mr. Bush then asserted there should be no § 3B1.1 enhancement and asked the court to reconsider it. The court rejected that challenge, saying there was "sufficient evidence to warrant the standard that is endorsed for the manager-supervisor role and not the leader-organizer" and that Mr. Bush was a manager or supervisor. *Id.* at 2248-49. The Government requested clarification about whether the court found that Mr. Bush was an organizer rather than a leader, manager, or supervisor. The court responded that Mr. Bush "qualified for the enhancement that is sponsored by subsection (c), not by subsection (b)." *Id.* at 2253. The Government then asked whether the court had considered certain evidence. The court said it had considered (1) a recording of Mr. Bush saying that another person characterized Mr. Bluett and Mr. Lewis as "up under [him]," *id.* at 2253-54, 2257; (2) Mr. Brown's testimony that Mr. Bush instructed him how to mix ingredients with heroin, *id.* at 2257-58; and (3) Mr. Brown's testimony that he overheard Mr. Bush reprimand a co-conspirator

for selling inferior heroin, *id.* at 2257-58.  The court said this evidence did not warrant a four-level enhancement under § 3B1.1(a).

    b.  *Draft order*

Following the December 2020 hearing, the district court circulated a draft order that revised its oral ruling on the § 3B1.1 enhancement.[3]  The court said that although it had ruled that the two-level enhancement under § 3B1.1(c) applied, "after reviewing the government's concerns," it determined that the three-level enhancement under § 3B1.1(b) instead applied.  ROA, Vol. I at 464.  The court repeated its conclusions from the December 2020 hearing that (1) the Government "hadn't carried its burden to establish that Mr. Bush was an organizer/leader" and (2) "Mr. Bush was a manager or supervisor under § 3B1.1(b)."  *Id.* at 520.  But it said that it had "mistakenly concluded that Mr. Bush should receive the two-level adjustment specified in § 3B1.1(c), not three levels under 3B1.1(b)."  *Id.*  It then "revise[d] its earlier ruling, concluding that Mr. Bush qualifie[d] for a three-level adjustment."  *Id.*  The court explained that "[a] manager/supervisor of criminal activity involving five or more participants receives a three-level adjustment under § 3B1.1(b), not two levels."  *Id.*

---

[3] The parties treat the draft order as substantively the same as the final order. *See* Aplt. Br. at 10; Aplee. Br. at 19.

In the draft order, the court also assigned a drug quantity of 2.21 kilograms of heroin to Mr. Bush. In calculating that quantity, the court relied on Mr. Bluett's and Mr. Assel's statements to law enforcement.

c. *April 2021 hearing*

The district court addressed the § 3B1.1(b) enhancement again during the April 2021 hearing. Mr. Bush asked a "question of clarification" about the enhancement: Whether his role under § 3B1.1 related to the conspiracy for drug distribution or the conspiracy to maintain the drug premises. ROA, Vol. II at 2338-39, 2342. The court responded that the § 3B1.1 enhancement did not concern a particular conspiracy. It said "there's abundant evidence that Mr. Bush managed or supervised a drug trafficking operation that operated, at least some of the time, out of [his father's residence]." *Id.* at 2391. Mr. Bush did not otherwise object to the § 3B1.1(b) enhancement.

The court also addressed the heroin quantity attributable to Mr. Bush. It again concluded that he was responsible for 2.21 kilograms of heroin, resulting in a base offense level of 30. It rejected Mr. Bush's challenge to the inclusion of 1.4 kilograms and 180 grams based on Mr. Bluett's and Mr. Assel's statements, respectively, finding those statements sufficiently reliable. The court said that Mr. Bluett's post-arrest statements about the quantity of heroin he dealt were corroborated by other sources' statements about the quantities they purchased from him. It explained that Mr. Bluett's initial false statements to law enforcement denying drug use and knowledge of heroin did not undermine the reliability of his

10

other statements because "[i]t [was] not surprising . . . that someone who ha[d] recently been arrested would make untrue statements to a law enforcement officer that tended to minimize their connection to the crime being investigated." *Id.* at 2393-94.  As to Mr. Assel, the court found the internal consistency of his drug quantity estimates supported the reliability of his statements.

The court determined that the total offense level was 37 and Mr. Bush's criminal history was category I, which yielded a Guidelines range of 210 to 262 months.[4]  The court sentenced Mr. Bush to 210 months.

d.  *Final order*

A week after the final sentencing hearing, the district court issued a detailed order memorializing its conclusions.  The order repeated that Mr. Bush was accountable for 2.21 kilograms of heroin, which resulted in a base offense level of 30 because it was between 1 and 3 kilograms of heroin.  It also reiterated that the three-level enhancement under § 3B1.1(b) applied because Mr. Bush was a manager or supervisor of a criminal activity involving five or more participants.

## II. **DISCUSSION**

Mr. Bush challenges (1) the district court's application of a three-level enhancement under § 3B1.1(b) based on his role as a manager or supervisor in the

---

[4] This included a 30-point base level plus a two-level adjustment for the special offense characteristic of the firearm, a two-level adjustment for the premises, and a three-level enhancement for his role as a manger or supervisor.

offense and (2) the district court's reliance on Mr. Bluett's and Mr. Assel's statements in calculating the drug quantity attributable to him.[5]

### A. *Section 3B1.1(b) - Three-level Role Enhancement*

Mr. Bush argues that the district court erred by applying a three-level enhancement under § 3B1.1(b) because it used an incorrect legal standard and inadequately explained the basis for the enhancement.

### 1. **Standard of Review**

When the issue is preserved, "we review the procedural reasonableness of [a] sentence for abuse-of-discretion, reviewing de novo the district court's legal conclusions regarding the guidelines and its factual findings for clear error." *United States v. Lawless*, 979 F.3d 849, 853 (10th Cir. 2020); *see Gall v. United States*, 552 U.S. 38, 51 (2007). Here, because Mr. Bush did not object to the legal standard or explanation for the enhancement below, we review for plain error.

Mr. Bush, pointing to his general objections to the PSR's recommendation of a § 3B1.1(a) enhancement and to the court's § 3B1.1(c) enhancement during the December 2020 hearing, questions whether review is for plain error. But he never asserted during the sentencing proceedings that the district court applied the wrong

---

[5] Mr. Bush raises a third issue—whether a court may rely on acquitted conduct for sentencing. *See* Aplt. Br. at 25. Because he concedes that current Supreme Court precedent forecloses this argument and seeks to preserve it only for Supreme Court review, *id.* at 25-27, we affirm on that ground. *See United States v. Dorris*, 236 F.3d 582, 587 (10th Cir. 2000) (affirming where defendant sought only to preserve argument for Supreme Court review because Supreme Court precedent controlled).

legal standard or that its explanation for applying a three-level enhancement under

§ 3B1.1(b) was inadequate.[6]  He did not preserve those arguments, so we review for

plain error.  *See United States v. Marquez*, 833 F.3d 1217, 1220 (10th Cir. 2016)

("Because [defendant's] counsel did not raise a procedural objection at the

sentencing hearing, his procedural challenge is reviewed for plain error.").

Under plain error review, Mr. Bush must establish there is "(1) error, (2) that

is plain, which (3) affects substantial rights, and which (4) seriously affects the

fairness, integrity, or public reputation of judicial proceedings." *See United States v.*

*Wright*, 848 F.3d 1274, 1278 (10th Cir. 2017) (quotations omitted).

2.  **Analysis**

The court did not apply an incorrect legal standard or fail to explain the basis

for the § 3B1.1(b) enhancement.

a.  *Legal standard*

The district court applied the correct legal standard, so there was no error, let

alone plain error.[7]

---

[6] At most, Mr. Bush asked a "question of clarification" regarding the enhancement—whether his § 3B1.1 role was related to the conspiracy for drug distribution or the conspiracy to maintain drug premises.  ROA, Vol. II at 2338-39. But that question did not preserve the arguments raised here.

[7] Mr. Bush does not challenge the district court's conclusion that the criminal activity involved five or more participants.

Mr. Bush argues the district court did not consider whether he exercised control over a subordinate in the conspiracy. *See* Aplt. Br. at 13.[8] We disagree. During the December 2020 hearing, the court addressed Mr. Bush's objection to the § 3B1.1(a) enhancement for his role as an organizer or leader. The court said "[i]t [was] plain . . . that [Mr. Bush] was one of two things: either an organizer-leader or manager-supervisor." ROA, Vol. II at 2240. To determine whether Mr. Bush qualified as an organizer/leader or a manager/supervisor, the court examined the factors listed in Application Note 4. We have explained that Application Note 4 aids in choosing between the four-level and three-level enhancements, and both require a finding of control. *See United States v. Aptt*, 354 F.3d 1269, 1286 (10th Cir. 2004). The court concluded there was "sufficient evidence to warrant the [enhancement] that is endorsed for the manager-supervisor role and not the leader-organizer." ROA, Vol. II at 2248.

In its discussion of the Application Note 4 factors, the court addressed whether Mr. Bush exercised control over a subordinate in the conspiracy. It noted (1) the testimony that "Mr. Bush controlled the activity within [his father's residence]," (2) that Mr. Bush "had extensive involvement at most levels" of the conspiracy, and (3) that the evidence favored an inference that Mr. Bush "was the man to see . . . if someone wanted to be hired as an accomplice in the organization." *Id.* at 2241-43.

---

[8] This argument seems to relate more to whether the district court failed to make a factual finding, not whether it applied the correct legal standard.

14

The court also considered evidence that Mr. Bush instructed Mr. Brown, a co-conspirator, how to mix ingredients with heroin and that Mr. Bush reprimanded Matthew Bush, Mr. Bush's nephew and a participant in the drug trafficking, regarding sales of inferior heroin.  This evidence showed Mr. Bush's authority over other participants.  *See Appt*, 354 F.3d at 1286-87.

Mr. Bush asserts that the court's discussion of *Valdez-Arieta* demonstrates it did not make a finding of control.  During the December 2020 hearing, the court said:

> [T]he court concludes that the government has not met its burden to sustain the four-level enhancement . . . .  Instead, consistent with the holding in the *Valdez* case, the court concludes . . . that "the defendant may be punished as an organizer under Guideline Section 3B1.1(c) for devising a criminal scheme, providing the wherewithal to accomplish the criminal objective, and coordinating and overseeing the . . . implementation of the conspiracy even though [he] may not have had any hierarchal control over other participants."

ROA, Vol. II at 2244-45 (quoting *Valdez-Arieta*, 127 F.3d at 1272).  But this discussion of *Valdez-Arieta* was tied to the court's mistaken § 3B1.1(c) determination, which the court later corrected.

The district court did not err.

b.  *Adequacy of explanation*

The district court did not err in explaining the basis for the enhancement.

"[I]t is well-settled that a district court must make specific findings and advance a factual basis to support an enhancement under U.S.S.G. § 3B1.1."

*Marquez*, 833 F.3d at 1221 (quotations omitted).  As discussed, at the December

15

2020 hearing, the court said that Mr. Bush was either (1) an organizer or leader or (2) a manager or supervisor.  It concluded he was a manager or supervisor, thoroughly analyzing the Application Note 4 factors and discussing the relevant evidence.  For example, it concluded that "[t]he evidence plainly establishe[d] [Mr. Bush's] involvement at multiple levels" because he "interacted with suppliers of heroin," "prepared heroin for sale," "collected proceeds from drug trafficking activity," "dispensed those proceeds," and "housed much of the drug trafficking organization's headquarters."  ROA, Vol. II at 2241-42.  The court also noted testimony that Mr. Bush "controlled the activity within [his father's residence]," *id.* at 2241, and that he "was the man to see . . . if someone wanted to be hired as an accomplice in the organization," *id.* at 2243.  The district court thus advanced a factual basis to support a § 3B1.1(b) enhancement.

Mr. Bush argues that the court's reasoning was not clear because it initially said he was an organizer under § 3B1.1(c) and "ma[de] factual findings about the absence of control that would preclude application of § 3B1.1(b)."  Aplt. Br. at 15.  We disagree with Mr. Bush's characterization of the proceedings.

The court said Mr. Bush was either an organizer/leader or a manager/supervisor and that the relevant factors did not warrant application of the organizer/leader enhancement under § 3B1.1(a).  It never made findings "about the absence of control," as Mr. Bush again suggests.  *Id.*  The court's quoting of *Valdez-Arieta*'s statement about the absence of control does not undercut its evaluation of whether Mr. Bush was a leader/organizer or manager/supervisor.  Nor does it

16

undermine the court's conclusion that there was "sufficient evidence to warrant the standard that is endorsed for the manger-supervisor role and not the leader-organizer [role]."  ROA, Vol. II at 2248; *see also id.* at 2249.

The district court recognized that it had mistakenly said that Mr. Bush was an organizer under § 3B1.1(c).  It follows that the court unnecessarily quoted *Valdez-Arieta*.  The court later corrected its "mistaken[] conclu[sion] that Mr. Bush should receive the two-level adjustment specified in § 3B1.1(c)" and found that the three-level enhancement under § 3B1.1(b) applied.  ROA, Vol. I at 520.  And through its Application Note 4 analysis, the court determined that Mr. Bush exerted control over his co-conspirators.

The court's discussion of the evidence adequately explained that there were at least five participants in the criminal activity and why Mr. Bush was a manager or supervisor.  That explanation supported the three-level enhancement under § 3B1.1(b).  The district court did not err on this ground.

\*    \*    \*    \*

The district court applied the correct legal standard and provided an adequate explanation to support the § 3B1.1(b) enhancement.  We affirm the imposition of a three-level sentencing enhancement under § 3B1.1(b) for Mr. Bush's role as a manager or supervisor.

B. *Section 2D1.1 - Reliance on Hearsay Statements for Drug Quantity*

Mr. Bush also challenges the district court's reliance on Mr. Bluett's and Mr. Assel's statements to law enforcement in calculating the drug quantity attributable to

17

Mr. Bush. The court did not clearly err by finding Mr. Bluett's statements sufficiently reliable. Because any error in relying on Mr. Assel's statements was harmless, we do not evaluate their reliability.

## 1. Standard of Review

"We review for clear error a district court's assessment of the reliability of evidence supporting a sentencing enhancement." *United States v. Martinez*, 824 F.3d 1256, 1261 (10th Cir. 2016). "To constitute clear error, we must be convinced that the sentencing court's finding is simply not plausible or permissible in light of the entire record on appeal, remembering that we are not free to substitute our judgment for that of the district judge." *United States v. Cook*, 550 F.3d 1292, 1295 (10th Cir. 2008).

## 2. Additional Legal Background

"District courts are not strictly bound by the Federal Rules of Evidence at sentencing hearings." *United States v. Ruby*, 706 F.3d 1221, 1229 (10th Cir. 2013). "[H]earsay statements may be considered at sentencing if they bear some minimal indicia of reliability." *Id.* (quotations omitted). Under U.S.S.G. § 6A1.3(a), "the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." "Corroborating evidence is often key to determining whether a statement is sufficiently reliable." *Ruby*, 706 F.3d at 1229.

18

3. **Analysis**

The district court did not clearly err by relying on Mr. Bluett's statements in making its drug quantity calculation.

First, the court plausibly concluded that Mr. Bluett's statements were sufficiently reliable. Following his arrest, Mr. Bluett told law enforcement that he had been selling heroin for roughly two years and sold about eight grams every two-to-three days, which the PSR calculated as 1.44 kilograms in total. As the court noted, three individuals corroborated Mr. Bluett's estimate. Each respectively confirmed buying approximately 42 grams from Mr. Bluett over the course of two months, buying gram quantities from Mr. Bluett, and purchasing 2-4 grams five times a week over the previous six to eight months. The district court explained that the third source's estimate "alone produce[d] heroin activity by Mr. Bluett in the 240- to 640-grams-level" and supported Mr. Bluett's quantity estimate. ROA, Vol. II at 2393.

As the district court also noted, Mr. Bluett's statements inculpated him in criminal activity, which reinforced their reliability. *See United States v. Garcia*, 78 F.3d 1457, 1467 (10th Cir. 1996) (informant's testimony "regarding conduct that could incriminate him in further criminal liability also enhance[d] the reliability of his statements").

Mr. Bush asserts that the district court erred because it "wrote off [Mr. Bluett's] repeated lies to law enforcement." Aplt. Br. at 22. But the court explained "[i]t [was] not surprising . . . that someone who ha[d] recently been arrested would

19

make untrue statements to a law enforcement officer that tended to minimize their connection to the crime being investigated." ROA, Vol. II at 2393-94. We have rejected the argument that inconsistent statements necessarily render certain statements unreliable where "the two accounts were one, evolving story reluctantly making its way toward truth." *Martinez*, 824 F.3d at 1262-63. Here, the court considered Mr. Bluett's initial denial of selling or using heroin in the context of his entire interview and plausibly found his statements about quantity sufficiently reliable. The court did not clearly err.

Second, because we conclude that Mr. Bluett's statements were sufficiently reliable, we do not consider the reliability of Mr. Assel's statements because any error in relying on those statements was harmless. "[T]his court rejects assertions of errors in drug quantity calculations as harmless if they do not affect the defendant's Guidelines range." *United States v. Sanchez*, 979 F.3d 1256, 1264 (10th Cir. 2020).

The district court found that Mr. Bush was accountable for 2.21 kilograms of heroin and that 180 grams (or 0.18 kilograms) were based on Mr. Assel's statements. Even without attributing the 180 grams of heroin to him, Mr. Bush would still be responsible for over 2 kilograms of heroin, which falls within the 1-to-3 kilogram range that provided Mr. Bush's base offense level of 30. *See* U.S.S.G. § 2D1.1(c)(5). Because Mr. Assel's statements did not affect Mr. Bush's base offense level or guidelines range, any error in relying on those statements would have been harmless. *See Sanchez*, 979 F.3d at 1264 (drug calculation error was harmless because

20

additional drug quantity did not affect the defendant's guidelines range or base offense level).

We thus affirm the district court on this ground.

### III. **CONCLUSION**

We affirm Mr. Bush's sentence.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge