**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 21, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee.

v.

MARTIN PENA ASTORGA,

Defendant - Appellant,

No. 21-2026
(D.C. No. 2:19-CR-02747-KG-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **EBEL**, and **CARSON**, Circuit Judges.
_____

Defendant Martin Astorga's wife drove him to Colorado Springs to pick up fentanyl and heroin.  He later pleaded guilty to conspiracy to distribute controlled substances.  The district court sentenced him to 136 months in prison, after applying U.S.S.G. § 3B1.1's aggravating-role enhancement.  The district court further prohibited Defendant from associating with his co-conspirators—including his wife—while on supervised release.  Defendant appeals both the application of the enhancement and the supervised-release condition.

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm the district court's application of the § 3B1.1 enhancement but vacate its supervised-release condition restricting Defendant's contact with his wife and remand for reconsideration.

I.

On May 17, 2019, Defendant agreed over the phone to sell Alejandra Gomez $50–60 of narcotics and met her at a Pic Quik station in Las Cruces, New Mexico, to complete the sale.  Eleven days later, Gomez texted Defendant that someone wanted a "big one" and that she could "grab the cash" for Defendant.  Defendant again told Gomez to meet him at the Pic Quik.  After Gomez left the parking lot, Las Cruces Police stopped her.  Gomez tried to run away, but officers stopped her and found 5.6 grams of methamphetamine in her sock.  The officers released her without questioning to preserve the ongoing investigation.

On May 31, 2019, Defendant called Joanne Dunlap, his sister-in-law, to tell her that he planned to stop by her house at 4:00 P.M. to pick up the package he had sent there.  Defendant had sent her address to his supplier so that the supplier could mail him heroin and fentanyl.  In exchange, he offered to pay Joanne for letting him use her address.  That same day, Drug Enforcement Administration agents coordinated with the United States Postal Inspection Service ("USPIS") to intercept packages directed to Joanne's house.  USPIS intercepted one package.  Executing a federal search warrant, agents searched the package and found eight ounces of heroin and 500 fentanyl pills.  Later that afternoon, agents observed Defendant at Joanne's

2

house and saw Joanne check her mailbox fifteen minutes later. A few minutes later, Defendant left. That evening, Defendant talked to his wife, Jesse Dunlap, on the phone and told her that, like last time, the package might be delayed.

By June 13th, Defendant still had not received the package, so he asked his supplier if he could pick up the package in Phoenix. Eventually, his supplier agreed to have Defendant pick up 600 fentanyl pills in Colorado Springs. So on June 19th, Defendant and Jesse began driving from New Mexico to Colorado Springs. Jesse drove while Defendant directed her where to go. When they arrived at the arranged address, an unknown female walked up to the white pick-up truck and handed Jesse a white plastic bag through the driver's side window. Defendant and Jesse immediately left the parking lot after the transaction. As they entered New Mexico, agents coordinated with state police to conduct a traffic stop. During the stop, the officer detected an odor of marijuana and searched the vehicle, finding the plastic bag containing 124.6 grams of heroin and 480 fentanyl pills in Jesse's purse. Jesse admitted to the officers that the bag belonged to her and that it contained heroin. Police released Jesse and Defendant and told them that the district attorney's office would review the evidence. Immediately afterward, Defendant told his supplier that the police seized the heroin and fentanyl during the traffic stop and that Jesse took the blame for it.

Nearly two years later, Defendant pleaded guilty to several counts of distributing fentanyl, heroin, and methamphetamine, and conspiracy to distribute controlled substances. Because the district court determined Defendant supervised

Jesse, Joanne, and Gomez, it applied the aggravating-role enhancement under U.S.S.G. § 3B1.1(c) to Defendant's sentence, making his guideline imprisonment range 151 to 188 months. But after considering the factors under 18 U.S.C. § 3553(a) and Defendant's good-faith attempt to assist the government, the district court varied downward and sentenced Defendant to 136 months' imprisonment followed by a five-year supervised-release term. As a supervised-release condition, the district court prohibited Defendant from having any communication or contact, direct or indirect, with any co-defendant or co-conspirator—including his wife, Jesse—without his probation officer's permission. Defendant timely appealed his sentence.

## II.

We review the district court's decision to apply the § 3B1.1(c) enhancement for clear error. United States v. Anderson, 189 F.3d 1201, 1211 (10th Cir. 1999) (citing United States v. Cruz Camacho, 137 F.3d 1220, 1223–24 (10th Cir. 1998)). Clear error exists when the record does not support the factual finding or if, after considering all the evidence, we have a definite and firm conviction that the district court made a mistake. United States v. Lozano, 921 F.3d 942, 946 (10th Cir. 2019) (citing United States v. Zar, 790 F.3d 1036, 1046 (10th Cir. 2015)). But when the district court's account of the evidence is plausible based on the entire record, we will not reverse even if we are convinced that we would have weighed the evidence differently. Anderson v. Bessemer City, 470 U.S. 564, 573–74 (1985). In other words, when two permissible views of the evidence exist, "the factfinder's choice

between them cannot be clearly erroneous." Id. (citing United States v. Yellow Cab Co., 338 U.S. 338, 342 (1949); Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc., 456 U.S. 844 (1982)). Thus, we give "great deference to the district court's application of the Guidelines to the facts." Lozano, 921 F.3d at 946 (quoting United States v. Eaton, 260 F.3d 1232, 1237 (10th Cir. 2001)).

Defendant raises two issues on appeal: whether the district court wrongly applied the aggravated-role enhancement under § 3B1.1(c) to Defendant's sentence and whether the district court violated Defendant's fundamental right to familial association by forbidding contact with his wife without his probation officer's permission while on supervised release. He raises a substantive and procedural challenge to each issue and concedes that he did not raise the procedural challenge to the first issue or any challenge to the second issue below. Thus, we review challenges that Defendant raises for the first time for plain error. Under the plain-error standard, Defendant "must demonstrate: (1) an error, (2) that is plain, meaning clear or obvious under current law, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Kearn, 863 F.3d 1299, 1305 (10th Cir. 2017) (quoting United States v. Piper, 839 F.3d 1261, 1265–66 (10th Cir. 2016)).

### III.

We first address whether the district court erred substantively by applying the aggravating-role enhancement under § 3B1.1(c) to Defendant's sentence before determining whether it erred procedurally by failing to adequately explain its

5

application of § 3B1.1(c).  Last, we consider whether the district court wrongly

restricted Defendant's right to associate with his wife as a condition of his supervised

release.

A.

1.

The district court did not clearly err when it applied § 3B1.1(c)'s aggravating-

role enhancement to Defendant's sentence.  The Sentencing Guidelines direct a

district court to increase a defendant's sentence by two levels "[i]f the defendant was

an organizer, leader, manager, or supervisor in any criminal activity."  U.S.S.G.

§ 3B1.1(c).  To determine whether this enhancement applies to a defendant's

conduct, a court should consider:

> the exercise of decision making authority, the nature of
> participation in the commission of the offense, the
> recruitment of accomplices, the claimed right to a larger
> share of the fruits of the crime, the degree of participation
> in planning or organizing the offense, the nature and scope
> of the illegal activity, and the degree of control and
> authority exercised over others.

§ 3B1.1 cmt. 4.  "In considering these factors, the sentencing court should remain

conscious of the fact that the gravamen of this enhancement is control, organization,

and responsibility for the actions of other individuals[.]"  United States v. Anderson,

189 F.3d 1201, 1211 (10th Cir. 1999) (quoting United States v. Torres, 53 F.3d 1129,

1142 (10th Cir. 1995)).  A defendant qualifies as a "supervisor" when he has

"exercised *any* degree of direction or control over someone subordinate to him."

Lozano, 921 F.3d at 948 (quoting United States v. Backas, 901 F.2d 1528, 1530 (10th

Cir. 1990)).  So for the enhancement to apply, Defendant "need only manage or supervise one participant."  United States v. Gonzalez Edeza, 359 F.3d 1246, 1248–49 (10th Cir. 2004) (citing Cruz Camacho, 137 F.3d at 1224).

Here, the presentence report's offense-level computation provided for a two-level increase under § 3B1.1(c) for Defendant's role in the offense as an organizer, leader, manager, or supervisor.  Defendant objected to that portion of the PSR because his dealing with Gomez did not qualify him for the enhancement.  At the sentencing hearing, the district court clarified that the Addendum to the PSR specified that Defendant's interaction with Jesse and Joanne Dunlap, along with Gomez, supported the § 3B1.1(c) enhancement.  The district court noted that there was no dispute as to the facts and determined that Defendant's supervision of Jesse, Joanne, and Gomez justified the enhancement.  Defendant argues the district court clearly erred in applying § 3B1.1(c) here because the facts do not show he acted as anyone's supervisor.  He also contends no evidence exists to show that he exercised control or organizational authority over Jesse, Joanne, or Gomez.

But Defendant need only have supervised one participant to qualify for the enhancement—and the record amply supports that he supervised Jesse.  See Gonzalez Edeza, 359 F.3d at 1248–49 (citing Cruz Camacho, 137 F.3d at 1224).  Defendant's testimony at the sentencing hearing revealed that Jesse had no contact with Defendant's supplier because she does not speak Spanish; she drove Defendant to Colorado Springs because he does not have a driver's license; and she knew where to go and when to leave because Defendant told her.

7

Still, Defendant argues that Jesse was not his subordinate, only his wife; that no evidence shows she accompanied him to Colorado Springs because he ordered her to; and that her participation was too isolated to establish a supervisor-subordinate relationship.  Defendant also cites out-of-circuit authority to argue that § 3B1.1's intent is not to punish providing another person with information.  Defendant's argument fails, however, because our precedent provides that someone qualifies as a "supervisor" under § 3B1.1 if he exercised "*any* degree of direction or control over someone subordinate to him." Lozano, 921 F.3d at 948 (quoting Backas, 901 F.2d at 1530).  The evidence shows that Defendant directed Jesse when and where to go as she drove him to pick up the drugs in Colorado Springs.  Because any degree of control or direction is sufficient, the record supports the district court's conclusion that Defendant functioned as a supervisor under § 3B1.1.  And we have already determined that "a single criminal endeavor" may trigger §3B1.1's enhancement– "sustained criminal conduct is not necessary." United States v. Marquez, 833 F.3d 1217, 1223 (10th Cir. 2016).  Thus, the district court did not clearly err when it applied § 3B1.1(c)'s aggravating-role enhancement to Defendant's sentence.

## 2.

Regardless of whether the district court erred by applying the enhancement, Defendant urges us to reverse because the district court failed to adequately explain why it applied the enhancement.  But Defendant did not raise this procedural complaint before the district court.  When a party does not raise a legal theory before the district court, we consider it forfeited on appeal, and will reverse only if the

8

district court plainly erred.  Richison v. Ernest Grp., Inc., 634 F.3d 1123, 1128

(10th Cir. 2011) ("To show plain error, a party must establish the presence of

(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously

affects the fairness, integrity, or public reputation of judicial proceedings.").

For purposes of our analysis, we will assume the district court did not

adequately explain the factual basis supporting the enhancement;[1] and that its failure

to do so satisfies prong one and two of our plain error test.

But to prevail, Defendant must also show that the error affected his substantial

rights.  "[T]o show that an error affected his substantial rights, [Defendant] must

establish a reasonable probability that, but for the error claimed, the result of the

proceeding would have been different."  Marquez, 833 F.3d at 1221 (quoting United

States v. Uscanga–Mora, 562 F.3d 1289, 1295 (10th Cir. 2009)).  And "[i]n the

context of sentencing enhancements, if '[t]he defendant . . . received a sentence

merited by the evidence . . . we cannot say . . . that, but for the claimed error, the

defendant's sentence would have been any different.'"  Id. (quoting Uscanga-Mora,

562 F.3d at 1295).

Defendant's position fails at this step.  Here, as demonstrated by our

conclusion that the evidence showed Defendant directed Jesse, Defendant received a

---

[1] We have held that "a district court 'must make specific findings and advance a factual basis to support an enhancement under U.S.S.G. § 3B1.1.'"  Marquez, 833 F.3d at 1221 (quoting United States v. Chisum, 502 F.3d 1237, 1242 (10th Cir. 2007)).  And "even if the record overwhelmingly supports the enhancement, appellate fact-finding cannot substitute for the district court's duty to articulate clearly the reasons for the enhancement."  Id. (quoting Chisum, 502 F.3d at 1242).

sentence merited by the evidence.  So, "we cannot say—as we would have to in order to reverse his sentence for plain error—that [Defendant's] substantial rights were violated."  Id. at 1223; United States v. Gehrmann, 966 F.3d 1074, 1083–85 (10th Cir. 2020) (third prong of plain error not satisfied where evidence supports application of enhancement.).  Thus, Defendant's procedural challenge fails, and we need not consider the remaining prong. [2]

B.

Defendant next argues that the district court wrongly restricted his right to associate with his wife as a supervised-release condition: procedurally because the district court failed to make the particularized findings necessary to support that restriction and substantively because the record has no sufficient findings to support such a restriction.  Defendant raised neither argument below, so we review both challenges to the condition for plain error.  We conclude the district court plainly erred by failing to make particularized findings justifying the condition.

"A district court has broad discretion to impose conditions on supervised release." United States v. Burns, 775 F.3d 1221, 1223 (10th Cir. 2014) (citing United States v. Mike, 632 F.3d 686, 692 (10th Cir. 2011)).  "But when a court imposes a special

---

[2] Defendant's position fails for another reason as well.  In assessing whether an appellant has met its burden of establishing prong three of our plain error test, we have been clear that the party seeking relief must do more than advance a bare assertion that the outcome in the district court was somehow affected by the district court's insufficient statement of reasons.  See United States v. Mendoza, 543 F.3d 1186, 1195 (10th Cir. 2008).  With respect to Jesse, Defendant offers only a two-sentence conclusion that no evidence supports the enhancement.  This is precisely the type of conclusory argument we have held insufficient to demonstrate an impact on a party's substantial rights.

10

condition that invades a fundamental right or liberty interest, [it] must justify the condition with compelling circumstances." Id. (citing Mike, 632 F.3d at 696). A defendant has a fundamental right to familial association. United States v. Lonjose, 663 F.3d 1292, 1303 (10th Cir. 2011) (citing United States v. Smith, 606 F.3d 1270, 1283–84 (10th Cir. 2010)). That right includes spouses. See Griffin v. Strong, 983 F.2d 1544, 1548 (10th Cir. 1993). Thus, a district court may only impose special conditions interfering with a defendant's right to associate with his spouse in compelling circumstances after making particularized findings. See Burns, 775 F.3d at 1222.

Here, as a condition of supervised release, the district court prohibited Defendant from having any communication or contact, indirect or direct, with any codefendant or co-conspirator, including his wife, Jesse. The court noted that before Defendant had any contact with Jesse, or anyone else involved in this conspiracy, he would need his probation officer's permission. But this discussion only described the condition without explaining the need for it.

Later, Defendant's counsel expressed concern and asked if the parties could soften their attitude toward communication between Defendant and Jesse. The district court acknowledged that Defendant and his wife should be able to communicate with each other with permission from the probation officer. The court explained it imposed a restriction because any co-conspirators should not be able to communicate if it could be furthering a conspiracy. But explaining the utility of prohibiting co-conspirators from communicating does not justify the need for interfering with Defendant's spousal relationship. The district court committed plain error by failing to make particularized

11

findings justifying the need for the condition.  See Burns, 775 F.3d at 1223 ("An error is plain if it is 'clear and obvious under current law.'" (quoting United States v. Brown, 316 F.3d 1151, 1158 (10th Cir. 2003))).

The government concedes the district court failed to make particularized findings justifying the condition limiting Defendant's contact with Jesse—fulfilling the first two plain-error prongs—and advocates remanding to the district court for reconsideration of the condition.  The government also concedes that the record allows a reasonable probability that the outcome would have been different had the court made such findings—satisfying plain error's third prong—and that this possibility also carries Defendant's burden under plain error's last prong.  Thus, we determine the district court committed plain procedural error by failing to make particularized findings explaining the need for restricting Defendant's contact with his wife and "remand for reconsideration of the supervised-release condition requiring [Defendant] to obtain permission from the probation office before he can contact [his wife]."  Burns, 775 F.3d at 1225.[3]

In sum, we affirm the § 3B1.1(c) aggravating-role enhancement of Defendant's sentence but vacate the supervised-release condition restricting Defendant's contact with his wife and remand for reconsideration.

---

[3] Because we vacate the supervised-release condition restricting Defendant's contact with his wife based on the district court's plain procedural error and remand for reconsideration, we do not reach Defendant's substantive challenge that the record contains insufficient findings to justify the condition.

AFFIRMED in part, VACATED in part, and REMANDED.

Entered for the Court


Joel M. Carson III
Circuit Judge